## No. 6336.

### M. L. ALEXANDER *v.* THE STATE.

1. PLEADING.—INDICTMENT OR INFORMATION is not bad for duplicity because it contains several counts charging different misdemeanors.
2. SAME.—It is not required that each and every count in an indictment shall conclude with the words "against the peace and dignity of the State," it being sufficient if the instrument as a whole so concludes.
3. CARRYING PISTOL INTO A PUBLIC ASSEMBLY, ETC.—Article 320 of the Penal Code defines the offense of going into a church, school room or other place where people are assembled for amusement, etc., having a pistol about the person. The persons excepted from the operation of this article by article 321 are peace officers only, and do not include even the owner of the premises in which the people are assembled. A school teacher does not come within the exceptions provided by the said article 321, and is not authorized to carry a pistol about his person in his school room, among his pupils, nor on the occasion of a public assembly in his school room.
4. SAME.—That the accused had reasonable ground for fearing an unlawful attack upon his person is not an available defense to a prosecution for a violation of article 320 of the Penal Code. But see the statement of the case for evidence *held* insufficient to support such defense even if available.

APPEAL from the District Court of Williamson. Tried below before the Hon. D. S. Chessher, County Judge.

Appellant, by information based upon affidavit, was prosecuted in the county court of Williamson county for three offenses. The charging part of the information is as follows: "That M. L. Alexander on or about the eighth day of February, A. D. 1889, in the county of Williamson and State of Texas, and anterior to the presentment of this information did unlawfully carry on or about his person a pistol, and did then and there unlawfully go into a place, to wit: the building known as the Corn Hill college, where persons were assembled for amusement, and did then and there have and carry about his person a pistol, and did then and there go into a public place known as the Corn Hill college there situate, at which people were assembled for purpose of amusement, and did then and there rudely display a pistol in a manner calculated to disturb the inhabitants of said public place; against the peace and dignity of the State."

Appellant filed a motion to quash the affidavit and informa-

tion, upon the ground that said papers were bad for duplicity in charging three distinct offenses in one count. This motion was overruled and he excepted. He pleaded not guilty and submitted the case to the court upon the evidence. The court adjudged him guilty of the second offense set out in the information, and assessed his fine at fifty dollars. He excepted to the judgment, filed a motion for new trial, which was overruled, and he appeals to this court.

W. W. Morris testified, for the State, in substance, that on the night of February 8, 1889, the defendant, in connection with the pupils of his school, gave an entertainment in the school house in Williamson county known as the Corn Hill college. The said entertainment, as advertised, was to comprise vocal and instrumental music and declamation and dialogue. Witness went to the said school house, and while standing at the door on the outside with Frank Cook, Dick Shaver, Albert Hill and Henry Hill, he saw a lady and her child refused admittance and turned away by one of the door keepers because she either could not or would not pay the admission fee of ten cents. Witness then determined to go into the school house without paying, and did so in company with Cook, Shaver and the two Hills. Immediately after the witness and his party took their seats, and while an instrumental piece was being rendered by some young ladies, the defendant left the platform or stage, and went down stairs. He soon returned, stood in and looked carefully over the room. Several persons in the audience remarked audibly: "He's looking for Burnham." Defendant then mounted the platform and went to the piano where the young ladies were still playing. They stopped playing about the time defendant reached the piano, and the curtain was lowered. Within a few moments defendant appeared on the stage in front of the curtain and remarked: "Some parties have entered, and are now in the room, who have not paid the admission fee. If they are gentlemen they will retire." He then read aloud, from a paper, the names of the witness and the four young men who were with him, viz: Cook, Shaver and the two Hills. Witness stood up and asked if he could speak a word. Defendant replied that he could, and witness said: "I have come up here without paying; I don't intend to pay, and I am not going down." Witness then resumed his seat, his words creating general confusion, but principally among the women and children, many of whom manifested a purpose to leave.

In replying to what the witness had stated, the defendant said, among other things: "You have no more right to come in here without paying than I have to go into a store and take goods without paying." This insinuation, that the witness was a thief, angered him, and, after a few more words, the witness, followed by Cook and Shaver, advanced towards the platform on which the defendant was standing. When witness reached a point within about six feet of defendant, defendant drew a pistol, covered witness with it, and ordered him to stand back. The witness stepped back and called Dr. McCarty's attention to the pistol in the possession of defendant. By this time about half the audience had left or were leaving the room. Defendant called to them not to leave, that no one would be hurt, as he was going to have an officer there to keep order. He then attempted to get somebody to go after Burnham, the constable, but no person would go until witness requested a boy to do so. When Burnham arrived the witness and his crowd left the school house. Witness had no pistol, and he saw no pistol on that night except the one defendant had. Witness made no demonstration nor threat when he started toward defendant.

On his cross examination the witness stated that he knew the entertainment was a pay concern before he went to the school house. The lady referred to by witness was turned off by the door keeper for refusing to pay the admission fee   Witness did not know whether the lady refused to pay the fee because she did not have the ten cents, or merely because she would not pay it. There was no understanding between the witness and Cook, Shaver and the Hills to go to the school house and attend the entertainment without paying. As the witness and his party started up stairs into the entertainment hall, the witness blew out the light and pushed out of his way a door keeper who demanded ten cents of him and tried to bar his way. About that time Cook remarked to Shaver: "Let's pay our dimes." They turned to a doorkeeper as if to do so, when witness called to him: "Don't do that, boys; come with me"—which they did without paying their way.

Frank Cook and Albert Hill testified, for the State, substantially as Morris did, denying that any previous understanding to go into the school room without paying existed between the parties named. Hill denied that, previous to the entertainment, he told John Sybett that he was going to attend the entertainment and was not going to pay to get in.

The school trustees for the Corn Hill free school community testified that the defendant was regularly employed by them on behalf of the school community to teach the public school, and that he taught that school in the building in which the entainment was given on the night alleged in the information. Defendant had the keys to and was in full possession of said school building, by consent of the said trustees. The public entertainments on this and previous occasions were given by the defendant and his pupils with the knowledge and consent, and under the active encouragement of the trustees. An admission fee, to be applied to the payment of a stove for the school room, blackboards, charts, library, etc., was charged at each occasion with the full knowledge and consent of the trustees.

A witness for the defense who testified to the transaction in the school house during the entertainment narrated it substantially as did the witness Morris.

Several witnesses testified, for the defense, that at different times recently before the entertainment they heard various parties living in Corn Hill, who were opposed to the practice of pay entertainments in the public school house, declare that they intended to force their way into the next entertainment without pay. One of those witnesses fixed the time of such threats as late as the day of the night on which the offense is alleged to have been committed. Several of said witnesses declared that they reported the said threats to the defendant. None of the witnesses named the defendant as a party who uttered such threats. This is the testimony upon which the defense of an anticipated "unlawful attack" was based.

*T. B. Cochran*, for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

WILLSON, JUDGE. It is not a valid objection to an indictment or information that it contains several counts charging different misdemeanors. (Waddell v. The State, 1 Texas Ct. App., 720; Gage v. The State, 9 Texas Ct. App., 259.) In this case the information charges three different misdemeanors in three separate counts, and is not bad for duplicity. The counts are informal, but it is nevertheless plain that they were intended for, and are substantially separate counts, and should not be construed as constituting but a single count. It is not required

that each count should conclude "against the peace and dignity of the State," but only that the indictment or information as a whole should so conclude. (West v. The State, ante.) The exceptions to the information were properly overruled.

This conviction is upon the second count in the information, which charges the offense defined in article 320 of the Penal Code. It was proved and not controverted that the defendant went into a place where persons were assembled for amusement, carrying about his person a pistol. His defenses were that the place where he carried the pistol was his own premises, and that he had reasonable ground for fearing an unlawful attack upon his person, etc.

With respect to the first defense this court has held that no person, unless he be a peace officer, can go into an assembly of people such as is named in article 320 of the Penal Code, and carry about his person a prohibited weapon, without violating the law, and not even the owner of the premises where the assembly is, is excepted. (Owens v. The State, 3 Texas Ct. App., 404; Brooks v. The State, 15 Texas Ct. App., 88.) Such, we believe, is the meaning and intent of the law, though we confess that to our minds the provisions of article 321 of the Penal Code are somewhat obscure. We can not believe that it was the purpose and intent of the Legislature to permit school teachers to carry prohibited weapons upon their persons in their school rooms among their pupils, or on the occasion of public assemblies in such school rooms. The law does not in terms accord to them such a privilege, and, without a clearly expressed exception in such case, this court will not sanction a defense, the effect of which would be to authorize every school teacher in the State to carry prohibited weapons upon his person in our school rooms. Such an effect could not be other than pernicious, and should not be tolerated.

As to the second defense, we do not think it was available in a prosecution upon the second count, but, even if it was, we do not think that it was sustained by the evidence, it not being shown that any such danger existed as the statute contemplates, or that the defendant had reasonable grounds for fearing an unlawful attack upon his person.

Believing that there is no error in the conviction, the judgment is affirmed.

*Affirmed.*