### John Dowell v. The State.

#### No. 69. Decided March 16, 1910.

**1.—Assault to Murder—Evidence—Declarations of Third Parties.**

Upon trial for assault to murder it was reversible error to admit in evidence the declarations of a third party with reference to a conversation had by him with the prosecuting witnesses, some time before the alleged assault, in which said party made a statement to said witnesses regarding the necessity of prudence of them in arming themselves by reason of the feeling of the defendant against them; all of which occurred in the absence of the defendant. Following Miers v. State, 34 Texas Crim. Rep., 161, and other cases.

**2.—Same—Evidence—Opinion of Witness—Ill-Will.**

Where, upon trial of assault with intent to murder, the State attempted to show the ill-will of the defendant against the party injured, it was reversible error to admit in evidence the opinion of the witness (who was the party injured) or his understanding or conclusion as to what defendant meant by saying to prosecutor, some two years before the alleged assault, that he would not stand for the conduct of prosecutor and would "call prosecutor down anywhere;" prosecutor being permitted to state that he thought this language meant a personal encounter.

**3.—Same—Charge of Court—Manslaughter—Aggravated Assault.**

Where, upon trial of assault with intent to murder, there was evidence raising the issue of manslaughter, upon which the court failed to submit a charge, but submitted fairly and fully the grounds upon which the alleged assault, if unlawful, would have been reduced to an aggravated assault, there was no reversible error.

Appeal from the District Court of Travis. Tried below before the Hon. George Calhoun.

Appeal from a conviction of assault with intent to murder; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*E. T. Moore, Q. Dickens* and *Dowell & Dowell,* for appellant.—On question of admitting declarations of third parties: Cases cited in the opinion.

Upon question of court's failure to charge on manslaughter: Villareal v. State, 26 Texas, 108; Jones v. State, 5 Texas Crim. App., 397;

Pharr v. State, 7 Texas Crim. App., 472; Shrivers v. State, 7 Texas Crim. App., 450; Kemp v. State, 13 Texas Crim. App., 561; Conner v. State, 23 Texas Crim. App., 378; Benevides v. State, 14 Texas Crim. App., 378; Nalley v. State, 28 Texas Crim. App., 387; Pogue v. State, 12 Texas Crim. App., 283; Foster v. State, 8 Texas Crim. App., 248.

*John A. Mobley,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—On a charge of assault with intent to murder presented by indictment of the grand jury of Travis County, on the 9th day of May, 1908, appellant was, at a trial in said court, on February 27, 1909, convicted and his punishment assessed at confinement in the penitentiary for a period of two years. The record is a very voluminous one and it will be impossible in any opinion which we ought to be asked to write to notice any considerable number of the questions presented in the record. In addition to a voluminous statement of facts the record contains thirty-one special charges requested and refused by the court and seventy-eight bills of exceptions, and presents altogether more than a hundred assignments of error. Again, it is impossible to make, in fairness to the entire record, a summary of the evidence which will do entire justice to the case. We shall do no more than make such a general statement of the case as will illustrate the few questions discussed. After a most painstaking investigation of the record we have concluded, in the light of the facts and in the light of the entire record, that the judgment of conviction ought to be reversed on account of the action of the court in ruling upon matters of evidence. The record shows that appellant was, at the time of the happening of the events hereinafter referred to, and for many years prior thereto had been, a lawyer, residing in Austin, and that during 1906, 1907 and 1908, and years prior thereto, he was the owner of a considerable ranch, and that some time not far from 1907 he became indebted to the West Texas Bank & Trust Company, of San Antonio, and to secure this indebtedness it took a mortgage on some or all of his property. In the matter of closing out, or efforts to foreclose said mortgage, Mr. Mason Williams, then as now residing in San Antonio, was counsel for the bank. This bank had, about the year 1907, sought to foreclose its lien and had seized and sold certain of the property covered or claimed to be covered by the mortgage, both real and personal. These efforts of the bank and the differences between the parties as to what was included and covered by the lien, the amount of the debt and other matters brought on a serious controversy between the bank and appellant in which to some extent Mr. Williams was involved. The transaction between appellant, who, it seems, for the most part acted in his own behalf, and Mr. Williams, later brought about and induced the filing of a petition by appellant in the District Court of Travis County to disbar Williams. In this proceeding Mr. Chas. W. Ogden appeared as counsel for Williams,

When the matter came on to be heard on the 15th of April, 1908, Mr. Jas. R. Hamilton, the District Attorney. of Travis County District, appeared with appellant in behalf of the motion to disbar. The matter had proceeded to some little extent, appellant taking an active and probably the leading part in the prosecution of his motion, when it developed on the 16th day of April that Mr. Hamilton was too unwell to proceed with the morning session of the court. Thereupon, at the suggestion of appellant, as he claims, and as the evidence seems to show, and with the consent and as some of the evidence indicates, at the suggestion of the court, the matter was postponed until 2 o'clock in the afternoon. Both Messrs. Ogden and Williams were at the time stopping at the Driskill Hotel, located on 6th Street, in the city of Austin. About 1 o'clock they were both at the hotel and at the Driskill bar when appellant entered. Just what occurred at this time is not agreed upon by the witnesses. A summary of the controversy between the parties may perhaps be gathered from the statements of Mr. Ogden and of appellant. Ogden states that while himself, Williams and a Mr. Green were standing at the bar appellant came in the room and he spoke to him pleasantly and asked him if he had heard whether Mr. Hamilton would be present and able to go on with the case at 2 o'clock, when appellant replied: "You must not speak to me—you can't speak to me; you have insulted me." To which he, Ogden, replied: "Why, yes, I can speak to you—I can speak to anyone; I have not insulted you." Appellant replied: "You did insult me. You asked me when I was on the witness stand whether I was willing to pay my honest debts or not." To this Mr. Ogden says he replied: "No, I did not ask you any such question as that; I had not asked you any question, and you know it, because you have testified only on direct examination, and I had not asked you a single question in cross-examination." That the matter was disputed vigorously for some minutes and Dowell finally replied: "Well, I may be mistaken; I will look at the stenographer's notes, and if I am mistaken I will apologize; but if I am not mistaken, you have got to fight." To which he, Ogden, replied: "All right, that is satisfactory; does that end this controversy?" Appellant stated: "Yes," and Ogden said: "Well, then, will you answer the question which I asked you in the beginning? Have you heard whether Mr. Hamilton will be ready to go on with the case at 2 o'clock?" To which Mr. Dowell replied he had not heard, and about this time, or perhaps a little before, Mr. Williams stepped up and said, speaking to Dowell: "Mr. Ogden is my attorney and I am responsible for whatever he says, and you can hold me responsible if he has insulted you;" that he, Ogden, then spoke to Mr. Williams and said to him: "That's all right, to let it go," and he stepped back and the conversation was concluded and Colonel Dowell walked out, and immediately after that he, Ogden, walked out. Appellant gives a somewhat different version of the matter and to this effect: He says in the first place that he did not know that any of the parties

were in the saloon when he went in there and was not expecting them and would not have gone in the saloon if he had known this fact; that immediately on entering the room Mr. Ogden said to him in a friendly way: "Dowell, do you know whether Mr. Hamilton is going to be able to go on with the case at two o'clock?" and he, appellant, replied that he did not know. Ogden then said: "O well, Jim Hamilton don't want to prosecute that case anyhow," and, "You have got no case," and talked to him in "bullragging" way, when he said to Mr. Ogden: "O, Ogden, don't talk that way; you made a remark about me," and that was all he said; that he just said: "You made a remark about me—you and I are friends; you made a remark about me in the courtroom that I don't think you ought to have made." That he, appellant, said: "You said that if a debt was honest in this transaction, that I wouldn't acknowledge it." That he, appellant, said: "Now, Ogden, you ought not to have said that." That Ogden said to him, witness: "John, I didn't say it, I didn't say it." That he, appellant, said: "Why, Ogden, you go and look at the stenographer's reports and you will see that you are mistaken and that you did say that," when Ogden said to him, appellant, a second time: "I didn't say it;" that there was no question about it. That just about this time Mr. Williams pushed Ogden aside, stepped up in front of him and said: "I assume the responsibility of that remark," and put his hands on a pistol and faced him, appellant, and that Williams walked up face to face with him between himself, Mr. Ogden and the bar and said: "I assume the responsibility of that remark." At this juncture the parties all separated, Mr. Dowell going out of the building, Mr. Ogden going into the rotunda of the hotel preceding Mr. Williams, and there was an intermission of a few minutes, probably ten or fifteen, before the next scene in the difficulty. Here also there is a radical difference in the statement of the parties. Before going into this matter it is well to state, and indeed, necessary, in order to present the case of the appellant fairly and in order to make readily understood the matters hereinafter discussed, that it is appellant's contention that he acted wholly in self-defense and that there was a conspiracy between Williams and Ogden, in which Mr. Leon Walthall, an officer of the bank, was to some extent a party. Appellant says that from the manner, position and way they sat and numerous other reasons which he undertakes to recite, he had discovered while in the courthouse that all his adversaries had pistols and that on the day of the difficulty he had filed an affidavit against Walthall charging him with unlawfully carrying arms. He says he was himself wholly unarmed, not having even a pocketknife, and that he was under the strongest obligations by a pledge of honor to his wife and friends not to become engaged in a difficulty; that on the morning in question his wife had given him a bill of groceries to buy, and being at the time out of money, he had taken a shotgun and pistol, which he had been keeping in his office for a long time, to the office of Mr. Jackson,

a pawn broker, the rear of whose store abutted on or was next to the Driskill Hotel, and to pledge same for a loan with the proceeds of which he intended to buy the groceries in question, and that he went through the hotel—not thinking even of Ogden or Williams—as the most direct and private way to reach Jackson's office or store; and that when he entered from the east and was proceeding toward the west door of the hotel he saw Mr. Williams, who almost immediately drew his pistol and fired the first shot, and shooting before he, appellant, fired any shot at all. Appellant produced one witness who corroborated his statement and another one or two who testified that the first shot fired was a pistol shot and not a shot from a gun. Other witnesses who had excellent opportunities of seeing the encounter, and who were, so far as the record discloses, not related to either party, and who should have been without bias, distinctly traverse these statements of appellant and their testimony, considered all together, makes a strong showing that appellant fired the first shot and that his attack on Williams was practically unprovoked.

1. Now then, in this condition of the record, the State placed on the witness stand, among others, N. A. Rector, a lawyer in Austin, and sought to prove by him and was permitted to prove by him certain statements, or the effect of them, made by him to Williams and Ogden. Touching this matter the court allows the bill attaching thereto a verbatim report of just what took place. The matter is, however, fairly well stated in the bill itself and as there chronicled is to this effect: "N. A. Rector, being on the witness stand and testifying for the State, was asked by the counsel for the State what, if anything, he said to Williams and Ogden at the time he was having a conference with them about the disbarment proceedings, the first time they came over here about a week or ten days before the trial of the disbarment proceedings. 'Now, I will ask you in that conversation whether either you or Mr. Maxwell in your presence or you in his presence made any statement to Mason Williams or Judge Ogden regarding the necessity or prudence of them arming themselves by reason of the feeling that Mr. Dowell had against them?' The defendant objected to said question and the answer sought to be elicited thereby on the following grounds, viz.: The same was prejudicial and injurious to the defendant and placed the defendant before the jury by opinion and not by direct evidence as a bad and dangerous man, which in no way was connected with this case, and further, the same did not tend to excuse or justify Williams or Ogden in the carrying of arms in the minds of the jury, when under the law they were committing unlawful acts and that the Act of the State of Texas for the unlawful bearing of arms did not authorize or justify any such bearing of arms such as they had, and defendant's character was not in issue. That said testimony was irrelevant and immaterial; that there was no controversy between Ogden and Dowell; that no man had a right to bear arms, because the court overruled said objections and the said witness testi-

fied as follows: 'Well, Mr. Williams made a statement as to Mr. Dowell, his feelings, and asked me if I believed he would be in danger on the trial of that motion. Without telling him anything that Mr. Dowell had ever said to me about him, I told him that Mr. Dowell was very much enraged against him and against Walthall, and he asked me would I advise him to arm himself. I told him I would not advise anybody—I would not be in a position to advise anybody to arm himself, but I thought he would be the biggest fool that ever was if he wasn't prepared for any kind of emergency, serious emergency, and there was a good deal of talk, but that is the substance of it.' The defendant then and there in open court excepted to all of such. The defendant then in open court moved the court to exclude from the consideration of the jury as evidence in the case the above statement of the witness N. A. Rector on the following grounds, viz.: That no one has any right to bear arms on any such statement. The right to bear arms is defined in the statute and this is not one of its exceptions. That said evidence was wholly irrelevant and immaterial and did not authorize Williams and Ogden to bear arms and any shadow of right that would appear in them on account of that statement of Mr. Rector would be prejudicial to the rights of the defendant and the court should exclude it." We think this testimony was inadmissible. Appellant was dealing with a status and a condition that in fact existed. His testimony that he believed or from his information knew that they were armed before the difficulty was, of course, a matter about which the jury might have had some doubt. That they were in fact armed when the difficulty ensued is disclosed by all the evidence and is not a matter of dispute. Neither Ogden or Williams were on trial. If they had been on trial for assault on Dowell undoubtedly this testimony would have been admissible. If they had been on trial charged with unlawfully carrying arms it probably would have been admissible. Since, however, Dowell was on trial, and since his claim and plea of self-defense must be judged of and determined by the facts known to him, it was not competent for the State to show conversations to which Dowell was a stranger. This we think is settled by such a weight of authority as to admit of no dispute. Among the cases which sustain this rule are those cited in appellant's brief, as follows: White's Code Criminal Procedure, sec. 1101; White's Criminal Code of Texas, sec. 1243; art. 338, Act of unlawfully carrying arms; Miers v. State, 34 Texas Crim. Rep., 161; Gilcrease v. State, 33 Texas Crim. Rep., 619; Brumley v. State, 21 Texas Crim. App., 222; Johnson v. State, 22 Texas Crim. App., 206; Ball v. State, 29 Texas Crim. App., 107; Fuller v. State, 30 Texas Crim. App., 559; Phipps v. State, 34 Texas Crim. Rep., 560; Jackson v. State, 31 Texas Crim. Rep., 552; Burke v. State, 15 Texas Crim. App., 156; Maines v. State, 23 Texas Crim. App., 568; Estes v. State, 23 Texas Crim. App., 600; Crook v. State, 27 Texas Crim. App., 198; Suit v. State, 30 Texas Crim. Rep., 319; Dubose v. State, 10 Texas Crim. App., 230; Hart v. State, 15 Texas Crim. App., 202;

McInturf v. State, 20 Texas Crim. App., 335; Chumley v. State, 20 Texas Crim. App., 547; Short v. State, 25 Texas Crim. App., 379, 8 S. W. Rep., 281; Alexander v. State, 27 Texas Crim. App., 533, 11 S. W. Rep., 628; Avant v. State, 25 S. W. Rep., 1073; O'Neal v. State, 32 Texas Crim. Rep., 42, 22 S. W. Rep., 25; Phillips v. State, 30 S. W. Rep., 1063; Buckler's Criminal Digest, pp. 292, 187 to 199.

2. We think there is another matter in respect to which there was error in the ruling of the court. While Mr. Williams was on the witness stand for the State he was asked in substance if he had any words or trouble with appellant in San Antonio, Texas, and if so, what was the nature and character of it? to which Williams replied that he had. He was then asked to state what this trouble was. To this question and to the answer sought to be elicited thereby objection was made that same was irrelevant and immaterial and had nothing to do with the case. The answer was as follows: "About two years ago I once had an interview with him in the courtroom in San Antonio. We were in the trial of a case and he told me not to say anything about him in the trial of that case; that he would not stand for it and would call me down anywhere. From his manner I understood from that that if I attempted to try the case in the manner in which I thought it ought to be tried that he would have a personal encounter with me." The defendant thereupon moved the court to strike out the above statements as evidence before the jury, or withdraw same from their consideration on the objections theretofore stated, and also on the ground that it was an inference or opinion of said Williams and same was not competent as evidence and that it was too remote. While somewhat remotely connected with the controversy in point of time this disagreement was part and parcel of a general attitude of hostility between appellant and Williams, and so connected with the matters of controversy out of which the trouble grew resulting in the disbarment proceeding that we think it was competent for Mr. Williams to have testified to anything said or done by appellant in the way of showing animus, hate and dislike, but clearly it was not competent for him to state "from his manner I understood from that that if I attempted to try the case in the manner in which I thought it ought to be tried that he would have a personal encounter with me." Appellant could not be bound by the inference that he drew from the facts stated. It may well be that appellant had a very different intent and purpose from that assumed and understood by the witness, and it may well be that the jury would have drawn a very different deduction and inference from the facts stated. It is never competent in respect to matters of this sort for a witness to state inferences, opinions and conclusions.

3. A number of the bills of exceptions incorporated in the record were by the court refused. Some of the bills tendered were explained by the court so as in our judgment not to show error. In respect to most of the matters raised, we think the ruling of the court was correct.

The charge of the court, though vigorously assailed, we think was sufficient and contained a fair and liberal presentation of the law of the case. While the court did not in terms define manslaughter, yet in charging on aggravated assault he did fairly submit the grounds upon which the assault if unlawful would have been reduced to that offense. We deem it unnecessary, in view of the facts that it would be impossible to do so in any reasonable limitations, to discuss all these matters in detail, contenting ourselves with the general statement that as presented there is no error shown.

For the errors pointed out the judgment of conviction is reversed and the cause is remanded.

*Reversed and remanded.*

(McCord, Judge, disqualified, did not sit in the case.)