Kimberli AUSTIN, Appellant,

v.

The STATE of Texas, Appellee.

No. 3–89–176–CR.

Court of Appeals of Texas, Austin.

May 16, 1990.

Rehearing Overruled June 6, 1990.

Laird Palmer, Austin, for appellant.

Ken Oden, County Atty., and Alia Moses, Asst. County Atty., Austin, for appellee.

Before POWERS and JONES, JJ., and JOHN F. ONION, Jr., Assigned Justice *.

JOHN F. ONION, Jr., Assigned Justice.

This is an appeal from a conviction for prostitution. Tex.Pen.Code Ann. § 43.02(a)(1) (1989). At the conclusion of the bench trial, the trial court assessed appellant's punishment at sixty (60) days confinement in the county jail, and at a fine of $200.00. The imposition of the sentence was suspended, and the appellant was placed on probation for 180 days subject to certain conditions of probation.

In her first point of error, appellant contends that the "trial court erred in admitting into evidence Officer Hutto's personal opinion, as to the meaning of the term 'Swedish Deep Muscle Rub.'"

John Hutto testified that, at the time of the trial, he had been employed as an Austin City police officer for approximately four years, and that on the date in question he and other officers were involved in an investigation of massage parlors and modeling studios. He related that at the Satin Spa the appellant took him to a room where the prices were listed on a sign for "Swedish Deep Muscle Rub." He observed the sign, and testified he had experience with that kind of terminology. When asked if the term had any "meaning" to him he answered: "Based on my training those words 'Swedish Deep Muscle Rub' are often key words for prostitution." After objections were overruled, Hutto was asked what in his opinion was meant by the terminology, and he replied: "'Swedish Deep Muscle Rub' in this type of massage parlor is often a catch phrase for prostitution."

■ First, appellant contends the testimony was inadmissible because it was hearsay. The only hearsay objection at trial to which appellant calls our attention followed Hutto's simple affirmative answer to the question of whether he had "had any prior experience with that kind of terminology." The objection was: "That calls for hearsay to the facts of this case." The trial court properly overruled the objection, as hearsay was not involved. See Tex.R. Cr.Evid. Ann. 801(d) (Pamp.1990).

Next, appellant argues the testimony was admitted in violation of Rule 701 of the Texas Rules of Criminal Evidence. Appellant contends the State made no effort to qualify Officer Hutto as an expert witness;

* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003 (1988).

therefore, the standard for his testimony is that of Rule 701 (opinion testimony by lay witnesses). Appellant did object on the ground of lack of personal knowledge, although she did not invoke Rule 701 by name. The court overruled the objection noting that it was "opinion testimony."

In Goode, Wellborn and Sharlot, 33 *Texas Practice–Guide to the Texas Rules of Evidence:* Civil and Criminal § 701.2, p. 491–94, it is stated:

> Given the conceptual difficulties inherent in the common-law rule against lay opinion and the mischievous results it produced, the drafters by Rule 701 opted for a more pragmatic approach. Adopted verbatim from the original Federal Rule 701, it provides that a lay witness may testify in the form of opinions or inferences when the opinions or inferences (1) are rationally based on the witness's perception and (2) help the factfinder to understand clearly the testimony or determine a fact in issue. The first requirement incorporates the personal knowledge requirement of Rule 602 [1]....

> \* \* \* \* \* \*

> Rule 701 seeks to insure that the trier of fact is presented with testimony in the form most likely to help the factfinder resolve the contested issues....

> By employing the functional "helpfulness" standard, Rule 701 leaves much to the discretion of the trial judge. Whether proferred opinion testimony is rationally based and helpful will be a function of the particular facts of the case and the trial judge will almost invariably be in the best position to make this determination. Therefore, the trial court's decision to admit or exclude lay opinion testimony should be overturned only when the trial judge has abused his discretion.

Under pre-rules practice, the general rule against receiving opinion testimony could be overcome by a lay witness who was presenting a "short-hand rendition" of the facts in opinion form that would assist the fact finder. There is no significant departure from this "short-hand rendition" practice. *See* H. Wendorf & D. Schlueter, *Texas Rules of Evidence Manual,* at 266–68 (Mechie 2d ed. 1988) [hereinafter "Wendorf & Schlueter"]. Rule 701 retains much of the pre-rules precedent, but has broadened the lay opinion testimony procedure slightly. *Gross v. State,* 730 S.W.2d 104, 106 n. 2 (Tex.App.1987, no pet.); *Wendorf and Schlueter,* at 268.

*Anguiano v. State,* 774 S.W.2d 344 (Tex. App.1989, no pet.), involved a prosecution under § 43.02(a)(1) of the Penal Code as does the instant case. In *Anguiano,* the officer was asked whether his dialogue with the prostitution defendant meant she was offering or agreeing to engage in sexual conduct. He answered "agreeing." His opinion or response was held admissible under Rule 701.

In *Williams v. State,* 760 S.W.2d 292 (Tex.App.1988, pet. ref'd), it was held that the officer's testimony regarding the common use of "vice grips" to assist in stealing cars was admissible under Rule 701 as opinion evidence based on the officer's personal observations and experience as a police officer.

We conclude in the instant case that Officer Hutto's testimony was admissible as opinion testimony under Rule 701. The State argues that the evidence was admissible under Rule 702 (expert testimony) of the Texas Rules of Criminal Evidence. It calls attention to Officer Hutto's training, experience, and several years of service as a police officer. Certainly a witness may qualify to give testimony under both Rules 701 and 702. *Wendorf and Schlueter,* at 271–272; *see generally* Sutton, *Article VII: Opinions and Expert Testimony,* 20 Hous. L.Rev. 445, 453 (1983).

In *Wood v. State,* 573 S.W.2d 207 (Tex. Cr.App.1978), involving a prosecution for aggravated promotion of prostitution, a police officer was held qualified to testify, based on his experience, that 2,000 index

---

**1.** In footnote 8 the authors of said authority at 491 wrote "if a dispute arises as to whether the witness possesses personal knowledge, the judge should admit the testimony so long as the other requisites of Rule 701 are met and there is sufficient evidence to support a finding of personal knowledge."

cards seized were "trick files" that listed clients, and that were generally used in prostitution enterprises.

In *Barnes v. State*, 634 S.W.2d 25 (Tex. App.1982, no pet.), there was no abuse of discretion in permitting an undercover agent, based on his experience, etc., to testify that a person caught with ten grams of methamphetamine was usually a dealer, and to express his opinion as to the probable purpose of the substance contained in four packets taken from the defendant. *See also Logan v. State*, 448 S.W.2d 462 (Tex.Cr.App.1969); *Selvidge v. State*, 171 Tex.Crim. 140, 345 S.W.2d 523 (1961).

The qualification of an expert witness is generally left to the sound discretion of the trial court. There is no hard and fast rule as to the extent of knowledge required to qualify a witness as an expert in a given field. *Brotherton v. State*, 666 S.W.2d 126 (Tex.App.1983, pet. ref'd). The trial court's decision to admit or exclude the proposed opinion testimony will not be disturbed on appeal unless a clear abuse of discretion is shown. *Steve v. State*, 614 S.W.2d 137 (Tex.Cr.App.1981).

Although the testimony could have been better developed, we conclude that Officer Hutto's testimony was also admissible under Rule 702. Appellant's first point of error is overruled.

■ In her second point of error, appellant contends the evidence was insufficient to support her conviction. The elements of the offense under § 43.03(a)(1) are:

(1) A person

(2) knowingly

(3) offers or agrees to engage in sexual conduct

(4) in return for a fee payable to the actor.

*Mattias v. State*, 731 S.W.2d 936 (Tex.Cr. App.1987); *Raven v. State*, 533 S.W.2d 773 (Tex.Cr.App.1976).

The complaint and information in the instant case alleged in pertinent part that the appellant on or about April 30, 1988, "did then and there knowingly agree to engage in sexual conduct for a fee, to wit: the said Kimberli Austin agreed to have sexual intercourse with J. Hutto for a fee."

Thus, the State had the burden to prove beyond a reasonable doubt that (1) Kimberli Austin (2) did knowingly (3) agree to engage in sexual conduct, to wit: sexual intercourse with J. Hutto (4) for a fee.

In the instant bench trial there was only one witness—Officer John Hutto of the Austin Police Department. He related that on April 30, 1988, he and other officers were in the process of investigating massage parlors and modeling studios; that on that date he went to the Satin Spa in Travis County. Hutto entered a living room area where there was a male and two females. The male told Hutto to select one of the females, and Hutto selected the appellant Austin. She led him down a hall to a room where there was a sign or signs as to the prices for "Basic Body Rub" and "Swedish Deep Muscle Rub." The appellant informed Hutto the "Basic Rub" was a "fingertip" massage, and the "Swedish Deep Muscle Rub" was a "more thorough and stimulating rub." The highest cost of the former was $60.00 for 60 minutes and the highest cost of the latter was $130.00 for 60 minutes. Hutto, a veteran of several years with the Austin Police Department, had experience with the terminology and understood that "Swedish Deep Muscle Rub" was "a catch phrase" or "key words" for prostitution. Hutto gave appellant $140.00 for the highest price "Swedish" rub. Appellant left the room and returned with his change of $10.00. They both then disrobed. The nude appellant laid face down on the bed and asked Hutto to massage her back, which he did for ten minutes. Then the appellant gave Hutto a massage on his back, legs, and buttocks for ten minutes. Appellant then asked Hutto if he would "like to end the session." He pretended not to understand, protesting that he had only been there twenty minutes, and had paid for an hour. Appellant repeated her inquiry. Hutto then asked if they ended the session could he "get more than just a rub." Appellant said "yes," and Hutto inquired whether he needed to pay her more money or give her a tip.

Appellant replied "no, it's all taken care of."

The record then reflects on redirect examination:

A: And after she said it was taken care of I asked her what I could get. And she asked me what did I want. And I told her a blow job or maybe a f__k. And she said "Choose one. It's one or the other."

Q: Was that—was either the blow job or the f__k included in the $130.00.

A: That was my understanding. Because she said that it was taken care of when I asked her if I needed to pay more.

\* \* \* \* \* \*

A: Well, we agreed on sexual intercourse and she—she—I asked her if she had some protection I could use, and she said "Yes" and got a condom out of her purse.

\* \* \* \* \* \*

Q: Did the defendant agree to engage in sexual conduct with you for a fee.

A: Yes

Q: And specifically what was that sexual conduct?

A: Sexual intercourse

The trial judge in a bench trial is the sole trier of the facts, the credibility of the witnesses and the weight to be given to their testimony, and may accept any part of or all the testimony given by the witnesses. *Wright v. State,* 603 S.W.2d 838 (Tex.Cr. App.1980); *Johnson v. State,* 571 S.W.2d 170, 173 (Tex.Cr.App.1978); *Limuel v. State,* 568 S.W.2d 309 (Tex.Cr.App.1978). *See also Williams v. State,* 692 S.W.2d 671 (Tex.Cr.App.1984); *Coe v. State,* 683 S.W.2d 431 (Tex.Cr.App.1984).

Reconciliation of conflicts and inconsistent testimony is for the trier of fact. *Jackson v. State,* 672 S.W.2d 801 (Tex.Cr.App. 1984). The trier of fact may believe or disbelieve all or any part of *a* witness' testimony, and may accept one part of a witness' testimony and reject the remainder. *Williams,* 692 S.W.2d 671; *Boughton v. State,* 631 S.W.2d 818 (Tex.App.1982, pet. ref'd). Conflicts will not call for rever-

sal if there is enough credible testimony to support the conviction. *Bowden v. State,* 628 S.W.2d 782 (Tex.Cr.App.1982).

And certainly the credibility of a witness is a matter for the trier of fact rather than for the Court of Appeals. *Aquino v. State,* 710 S.W.2d 747 (Tex.App.1986, pet. ref'd); *Foster v. State,* 687 S.W.2d 65 (Tex.App. 1985, pet. ref'd); *Westfall v. State,* 663 S.W.2d 664 (Tex.App.1983, pet. ref'd). *See also United States v. Jennings,* 726 F.2d 189 (5th Cir.1984); *Moreno v. Estelle,* 717 F.2d 171 (5th Cir.1983), *cert. denied,* 466 U.S. 975, 104 S.Ct. 2353, 80 L.Ed.2d 826 (1984).

The standard for review of the sufficiency of evidence is whether, viewing the evidence in the light most favorable to the judgment of the court (in a bench trial), any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Jackson,* 672 S.W.2d at 803; *Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Cr.App.1986). The standard remains the same for direct and circumstantial evidence cases. *Carlsen v. State,* 654 S.W.2d 444, 449 (Tex.Cr.App.1983) (opinion on rehearing).

Appellant agrees that the prosecution established all the elements of the offense except one. Appellant acknowledges the proof showed she agreed to engage in sexual intercourse, but argues the evidence does not show that she did so "for a fee." She contends the $130.00 "session" ended before she agreed to the sexual intercourse, that she "was no longer being compensated for her personal services, and that she made no effort to obtain compensation for any sexual activity." The State counters that the evidence showed that Hutto agreed to end the 20–minute "session" only after he determined from the appellant that he could get "more than a rub" and that it was "all taken care of," and that the parties agreed to sexual intercourse. There was certainly evidence to this effect, and the trial court was the trier of the facts.

In her brief, appellant cites only *Young Sun Lee v. State*, 681 S.W.2d 656 (Tex.App. 1984, pet. ref'd), and *Tisdale v. State*, 640 S.W.2d 409 (Tex.App.1982, pet. ref'd).[2] Appellant's counsel in oral argument told this Court that the interpretation to be given *Young Sun Lee* would determine the outcome of this case.

In *Young Sun Lee*, the record showed that the defendant was present during the conversation that took place prior to the exchange of money and during the payment. Later, she told the vice squad officer that the "blow job" he wanted was "covered in the other money you gave." There the evidence was held sufficient to show that the defendant offered or agreed to the sexual conduct for a fee. In the instant case, appellant negotiated the arrangements herself and personally handled the money. Appellant's later response that no further money was necessary because it is "all taken care of" is similar to that of Lee's response to the vice squad officer.

Viewing the evidence in the light most favorable to the judgment of conviction, we conclude that a rational trier of fact could have found *all* the essential elements of the offense of prostitution as alleged beyond a reasonable doubt.[3]

Appellant does not cite or rely upon *Trippell v. State*, 535 S.W.2d 178 (Tex.Cr. App.1976), or *Roper v. State*, 652 S.W.2d 398 (Tex.Cr.App.1983), although they have been cited in other cases on occasion. *Trippell* was reversed on the basis that the accused had been denied the right of effective confrontation and cross-examination of the witness Smith. The conviction for aggravated promotion of prostitution under Tex.Pen.Code Ann. § 43.03 was reversed. The court did express serious doubts about the sufficiency of the evidence, although this was not the basis of the reversal. An officer took the witness Smith to Dee's

Health Spa. When Smith indicated he wanted a massage, the defendant Trippell told him it would cost $20.00 and Smith chose Welsh. After taking Smith to a room, Welsh collected $20.00 from him and left. When she returned, she began the massage while fully clothed and asked Smith what he wanted. He replied a "local" and Welsh masturbated him to a climax. The court expressed doubt this constituted prostitution under § 43.02 in its general overall assessment of the evidence to show an offense under § 43.03.

In *Roper*, a 5–4 decision, two officers paid a Mr. Brownwell $70.00 for "contact session" massages. Later, the massages by Roper and Pierre, the defendants, turned into sexual conduct. There, the court wrote: "There is no evidence that either appellant negotiated a price for sexual favors [*McCarty v. State*, 616 S.W.2d 194 (Tex.Cr.App.1981); *Morris v. State*, 565 S.W.2d 534 (Tex.Cr.App.1978)], or received money for her sexual favors [*West v. State*, 626 S.W.2d 159 (Tex.App.—Beaumont 1981)]. We find the evidence insufficient to show that appellant engaged in sexual conduct for a fee."

Interestingly enough, there is no requirement under the statute for the defendant to negotiate a price, *see Lee*, 681 S.W.2d 656, nor is there a need for money to exchange hands. In fact, in *West*, the officer paid the defendant for the massage and then again for her to undress, but the opinion does not show he paid her the later quoted prices for sexual conduct as *Roper* would indicate. Neither *Trippell* (pre-*Jackson v. Virginia*) nor *Roper* (post-*Jackson v. Virginia*) applied any standard of review to determine the sufficiency of the evidence. Assuming their continued viability, they are distinguishable on their facts from the instant case. Appellant's second point of error is overruled.

---

2. *Tisdale* held that the term "fee" within subsection (a)(1) of § 43.02 means payment in return for professional services rendered. This does not mean, of course, that there must be an actual exchange of money. *See Ozack v. State*, 646 S.W.2d 941 (Tex.Cr.App.1983); *Robinson v. State*, 643 S.W.2d 141, 142 (Tex.Cr.App.1982); *McCarty v. State*, 616 S.W.2d 194 (Tex.Cr.App.

1981); *Anguiano v. State*, 774 S.W.2d 344 (Tex. App.1989, no pet.).

3. A disclaimer must be filed. This opinion speaks for itself. The "theory or theories of the majority" referred to in the dissenting opinion are the dissent's own interpretations, often in the form of straw men.

The judgment is affirmed.

Affirmed.

POWERS, Justice, dissenting.

I believe the trial court erroneously admitted in evidence the officer's opinion testimony. The testimony supplies, in the majority's view, a link between Austin's agreement for sexual intercourse and the $130 fee paid by the officer. Without the *officer's opinion* that the words "Swedish Deep Muscle Rub" implied "prostitution," no such link was established under the majority's reasoning. Hence the error was harmful. Whether or not the officer's opinion was properly in evidence, however, I believe the evidence insufficient to establish two essential elements of the offense: that Austin "knowingly" agreed to sexual intercourse "for a fee." For these reasons, I dissent.

### THE MAJORITY'S THEORY

The police officer testified that the words "Swedish Deep Muscle Rub," on the sign, had a "particular meaning" *to the officer*, based on his "training." The words are, he said, "often key words for prostitution," and "in this type of massage parlor [they are] often a catch phrase for prostitution." The "training" and "type of massage parlor" intended by the officer are not further described in the evidence. There is no evidence that the "particular meaning" held by the officer was also held by Austin or by anyone else apart from the officer.

Nevertheless, the majority opinion binds Austin to the officer's "particular meaning" (that he knew only after his "training") based on a series of successive, dependent inferences erected upon that meaning: (1) the "Satin Spa" was a massage parlor of the "type" the officer had in mind, even though that "type" is not otherwise described; (2) because Austin worked in that "type" of massage parlor, she *must have known* of the meaning that was current there in connection with the expression "Swedish Deep Muscle Rub"; therefore (3) she *must have made* the agreement for sexual intercourse in reference to the same "particular meaning" the officer

subjectively attached to the expression "Swedish Deep Muscle Rub," which is to say, in his words, "prostitution."

"This cannot be done under the rule of evidence." *Lee v. State*, 152 Tex.Crim. 401, 214 S.W.2d 619, 622 (1948). "One of the cardinal principles touching the sufficiency of circumstantial evidence is that an inference based upon an inference will not suffice. Also the circumstances relied upon must exclude every other reasonable hypothesis except the guilt of the accused and must go further than to raise a probability or suspicion." *Williamson v. State*, 156 Tex.Crim. 520, 244 S.W.2d 202, 204 (1951).

### THE OPINION TESTIMONY

The record shows that defense counsel levied three objections to the officer's statement that the expression "Swedish Deep Muscle Rub" implied "prostitution" in his opinion: (1) the statement was inadmissible hearsay; (2) the meaning of the sign was not subject to interpretation by the officer's opinion of what it meant; and (3) his interpretation was inadmissible because based upon his "training," or what he was told by others, rather than upon "personal experience." The last two objections referred expressly to the *trial court's* statement that he thought the officer's testimony admissible *because it was opinion* evidence. The trial court overruled each objection in turn.

I should think the objections were sufficient to preserve *any* appellate complaint based on the fact that the officer's statement was an opinion only. The trial judge must have known the substance of defense counsel's objection. The judge himself first characterized the evidence as "opinion" evidence as opposed to "hearsay," and counsel's second and third objections referred to that characterization.

I would hold inadmissible the officer's interpretation because he testified the words "Swedish Deep Muscle Rub" were "key words" and a "catch phrase" for "prostitution." Neither a lay nor an expert witness may give in evidence an opinion

that entails or amounts to a legal conclusion. *Mays v. State*, 563 S.W.2d 260, 262, n. 3 (Tex.Cr.App.1978). The officer's opinion that "Swedish Deep Muscle Rub" meant "prostitution" entailed necessarily a conclusion by him regarding the elements of "prostitution" set out in Tex.Pen.Code Ann. § 43.02 (1989). Hence, his opinion was inadmissible, especially when the opinion referred to the very offense with which Austin was charged.

Secondly, I would hold the officer's opinion inadmissible to explain what was meant by the language on the sign, there being in the evidence nothing to show that the one who placed it there intended it to have a meaning different from a "massage." As a general rule, the opinion of a witness is not admissible to interpret the written language of another, an exception being allowed for cases where it is shown that the writer himself agreed and intended that his words should have a meaning different from their ordinary import. *Ochoa v. State*, 221 S.W. 973, 975 (Tex.Cr.App.1920); *Rowan v. State*, 57 Tex.Crim. 625, 124 S.W. 668, 672 (1910). There is no such showing here. The case of *Wood v. State*, 573 S.W.2d 207 (Tex.Cr.App.1978), cited in the majority opinion, does not purport to deviate from the general rule, nor does it even involve the general rule. Rather, that case dealt with an officer's opinion concerning "what certain symbols stood for," as opposed to the meaning of words written in the English language or a legal conclusion such as the officer gave here.

Thirdly, I would hold the officer's opinion inadmissible because the State never demonstrated its materiality as an interpretation of the sign. The officer testified the words had a "particular meaning" to him when found in "this type of massage parlor," but nothing in the evidence brought the "Satin Spa" into the "type" of massage parlor the officer had in mind, nor did the evidence show that Austin also understood the words as the officer understood them based on his training. "Without such a demonstrated nexus, there was no reasonable basis for believing that the" particular meaning held by the officer was material.

*Pinson v. State*, 778 S.W.2d 91, 94 (Tex.Cr. App.1989).

Fourthly, if the officer is viewed as a lay witness his want of personal knowledge was evident. He stated his opinion was based on his "training." In all events, the evidence does not show that he had any personal knowledge or experience in the matter. I do not, in consequence, understand the majority's reference to the officer as a lay witness, for the opinion of a lay witness must rest on personal knowledge to be admissible. Tex.R.Cr.Evid. 602 (Pamp.1990); Goode, Wellborn & Sharlot, *Texas Rules of Evidence: Civil and Criminal* § 701.2, at 491 (1988).

In summary, I would hold for any of the foregoing reasons that the trial court erred in admitting the officer's opinion in evidence. The error must be viewed as harmful and requiring reversal under the majority's theory. That theory reasons that Austin's agreement for sexual intercourse and the fee paid by the officer both had reference to the sign *as the officer interpreted it* and as Austin *must have* understood it because she worked where she did. Without the officer's interpretation, there is nothing to connect the $130 fee to Austin's agreement for sexual intercourse as opposed to a massage characterized as a "Swedish Deep Muscle Rub." Stated another way, without the officer's opinion the evidence is clearly insufficient to establish *beyond a reasonable doubt* the necessary link between the fee and Austin's agreement for sexual relations.

## SUFFICIENCY OF THE EVIDENCE

I would hold that the evidence was insufficient in any event to sustain a rational finding, *beyond a reasonable doubt*, that Austin *knowingly* agreed to have sexual intercourse with the officer *for a fee*. Tex. Pen.Code Ann. § 43.02(a)(1) (1989); *see Jackson v. Virginia*, 443 U.S. 307, 319 n. 12, 99 S.Ct. 2781, 2789 n. 12, 61 L.Ed.2d 560 (1979); *Jackson v. State*, 672 S.W.2d 801, 803 (Tex.Cr.App.1984).

The evidence is uncontradicted that Austin accepted from the officer $130.00 for a massage characterized as a "Swedish Deep

Muscle Rub," and that she subsequently agreed to have sexual relations with the officer. The issue on appeal concerns the sufficiency of the evidence to show that the $130, paid initially and nominally for a "massage," was actually understood by Austin from the outset as payment for sexual relations. Unless this be shown, one may not reasonably conclude that Austin "knowingly" agreed to have sexual intercourse "for a fee."

Where a fee is paid or agreed upon for *explicit* sexual activity, the "knowing" and "fee" elements are easily inferred. *See, e.g., Laverne v. State,* 737 S.W.2d 379 (Tex. App.1987), remanded on other grds., 753 S.W.2d 404 (Tex.Cr.App.1988) (defendant offered explicit sexual conduct and asked the officer how much money he had, replying "that is enough" when the officer said $40); *Young Sun Lee v. State,* 681 S.W.2d 656 (Tex.App.1984, pet. ref'd) (defendant received money without reference to any kind of conduct on her part, asking what the officer wanted and saying "it was covered in the money ... already given" when the officer proposed an explicit sexual act); *West v. State,* 626 S.W.2d 159 (Tex.App. 1981, pet. ref'd) (defendant offered two kinds of explicit sexual acts for different prices over and above the $30 paid by the officer for "modeling" services); *McCarty v. State,* 616 S.W.2d 194 (Tex.Cr.App.1981) (defendant "haggled" over price of explicit sexual act she had proposed). A case of that kind is not a circumstantial-evidence case.

In the present case, there was no initial agreement for conduct on Austin's part that was explicitly sexual. Instead, the officer paid $130 for a "massage" described as a "Swedish Deep Muscle Rub." If that meant sexual conduct, it was only by innuendo or suspicion. "Swedish Deep Muscle Rub" was ambiguous at best as to what it meant; nominally at least it was a "massage." Thus, the evidence does not show, *without more,* a link between the fee paid by the officer and Austin's subsequent agreement for sexual relations, reached *after* the fee was paid and the massage begun. The link, and hence the finding of the requisite elements ("know-

ing" and "for a fee"), must be inferred, if at all, from the totality of the circumstances shown in the evidence. The present case is thus a circumstantial-evidence case.

The majority infer the necessary link on this reasoning: (1) the expression "Swedish Deep Muscle Rub" implied, according to the officer's subjective opinion, sexual intercourse; (2) Austin must have known that the expression implied sexual intercourse because she worked in a "type" of massage parlour where that meaning was current; (3) Austin accepted the stated price of $130 for a "Swedish Deep Muscle Rub," declining any additional sum saying "it's all taken care of;" (4) therefore, Austin's initial acceptance of the $130 must have had reference to the sexual intercourse implied in the expression "Swedish Deep Muscle Rub." I cannot accept this reasoning as a basis for connecting the $130 to Austin's subsequent agreement for sexual relations. At least, I cannot do so as a basis for making the necessary connection beyond a reasonable doubt. I refer again to the stepladder of inferences upon which the majority rest their opinion.

In discussing the matter further, I shall refer to two decisions that Austin does not cite in her brief, as pointed out in the majority opinion. They are *Trippell v. State,* 535 S.W.2d 178 (Tex.Cr.App.1976) and *Roper v. State,* 652 S.W.2d 398 (Tex. Cr.App.1983). That Austin does not cite them does not mean they vanish from the pages of our State's jurisprudence. We are bound by *stare decisis* to follow any applicable point of law laid down in them whether she cites them or not.

In *Trippell,* the Court reversed a judgment of conviction for aggravated promotion of prostitution alleged against the operator of a "health spa." The Court stated that it was difficult to characterize as "prostitution" the sexual act of a masseuse which was outside the scope of the *massage* for which the officer had nominally paid, where "no further money was exchanged." *Trippell,* 535 S.W.2d at 181. In *Roper,* the Court found the evidence insufficient to show the defendants en-

gaged in sexual conduct "for a fee." The Court reasoned: (1) the evidence did not show that money was exchanged between the officers and the defendants personally (the officers had paid the money to a male who greeted them as they "entered the Golden Girl Studio"); (2) the Court declined to interpret the money nominally paid by the officers for "two contact sessions" as payment for the sexual conduct in which the two defendants engaged later; and (3) there was no evidence that the two defendants "negotiated" a price for their sexual favors or received money for them. *Roper*, 652 S.W.2d at 399. The third factor could only mean there was no evidence of any *additional* sum paid to or negotiated with the defendants, for the officers had paid for "contact sessions" on entering the "studio."

I believe *Trippell* and *Roper* rather clearly lay down the following proposition of law: where a stated price is paid or agreed upon in exchange for services that are not *explicitly* sexual in nature, such as a "massage" or a "contact session," some *additional* fee must be paid, agreed upon, or negotiated in order to render any *subsequent* agreement for sexual services "prostitution" because engaged in "for a fee." I would apply that proposition here where the "massage" was described as a "Swedish Deep Muscle Rub." In my understanding of *Trippell* and *Roper*, this legal principle is inescapable. It is no use to pretend the opinions do not exist; it is up to the Court of Criminal Appeals to change the proposition for which they stand. It is not our place to avoid that proposition or to try to explain it away when it is clearly applicable and controls the case.

It is undisputed that no such additional fee is shown in the evidence in Austin's case. The majority reason on the opposite theory—that the fee in question was the $130 paid for a "Swedish Deep Muscle Rub," which expression *implied* sexual services from the outset. But it is precisely in reference to such ambiguous expressions that *Trippell* and *Roper* require evidence of some additional sum before the fee element may be inferred beyond a reasonable doubt.

I have not mentioned heretofore a piece of the evidence omitted from the majority opinion. I refer to the officer's testimony that he paid not for sexual services but for a *massage*, which he received but which "terminated" by mutual agreement after 20 minutes of the 60–minute "session" for which he had paid. The agreement for sexual relations followed. I refer also to the officer's testimony that any sexual activity Austin had agreed "to engage in was to be engaged in *after* that session was ended; ...." These statements by the officer bring the case squarely within *Trippell* and *Roper*, of course. "Having already paid for the *massage* it was difficult to characterize [Austin's] actions as prostitution under V.T.C.A. Penal Code, Sec. 43.-02." *Trippell*, 535 S.W.2d at 181 (emphasis added).

More to the point for present purposes, however, the officer was called by the State, and all of his testimony was consistent and uncontradicted. This is not a case where the trial court was entitled to believe one or the other of two inconsistent items of testimony. Rather, the parts of the officer's testimony to which I refer are inconsistent only *with the majority's inferences and theory.*

The officer testified that Austin replied "it's all taken care of" when the officer asked if more money was required for the sexual services contemplated in the subsequent agreement. This and the officer's opinion of the meaning of "Swedish Deep Muscle Rub," augmented by the series of inferences mentioned above, constitute the basis upon which the majority rely in finding the evidence sufficient regarding the "fee" and knowing-conduct elements of the offense. I concur that Austin's statement *could* mean that she understood all along that the $130 constituted payment for sexual relations if the officer wished them as part of, or in lieu of, a *bona fide* massage. But Austin's statement does not necessarily carry that meaning because the statement is itself uncertain and ambiguous. Its meaning depends upon the circumstances in which it was uttered.

The case against Austin is entirely one of circumstantial evidence because the evidence shows that under the initial agreement the $130 constituted payment for a massage as opposed to payment for explicit sexual services. Thus, we may not affirm the judgment below unless the evidence excludes every reasonable hypothesis except Austin's guilt. The officer's testimony raised such a hypothesis when he stated that Austin's agreement for sexual relations contemplated activity to occur after the massage "session" *ended.* This implies that the $130 was paid only in consideration of a *bona fide* massage, rather than for sexual relations. The officer stated, moreover, that he might have gotten a *bona fide* massage for the full 60 minutes if he had wished. This testimony is inconsistent with the theory that the $130 was paid for sexual services in the very beginning, and it naturally raises in my view the hypothesis that Austin's agreement for sexual relations was unrelated to the original massage for which the $130 was charged, so that her statement "it's all taken care of" might have meant simply that her agreement for sexual relations was gratuitous. I find in the record nothing to exclude that hypothesis.

While the evidence unquestionably raises a suspicion regarding Austin's conduct, I would hold the evidence insufficient to sustain a finding by a rational trier of fact, beyond a reasonable doubt, that she agreed to sexual relations "knowingly" and "for a fee."

I would therefore reverse the conviction.