11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Andrie Smith

Appellant

Vs.                   No.
11-01-00106-CR B Appeal from Dallas County

State of Texas

Appellee

                                                             Memorandum
Opinion                         

Andrie
Smith waived his right to a trial by jury and pleaded Anot guilty@ to the indictment for aggravated assault and Anot true@ to the enhancement paragraphs (which alleged a prior felony conviction
for burglary of a habitation in 1989 and a prior felony conviction for
aggravated assault with a deadly weapon in 1991).  After a nonjury trial, the trial court found that appellant was
guilty of aggravated assault, that he used his hands as a deadly weapon during
the assault, and that the two enhancement paragraphs were true.  The trial court sentenced appellant to
confinement for 60 years.  We will
modify the trial court=s
judgment to show that there was no plea bargain and that appellant did not
plead Atrue@ to the enhancement paragraphs. 
As modified, the judgment of the trial court is affirmed.

                                                         Issues
for Appellate Review

Appellant
presents three issues for appellate review. 
In Issues Nos. 1 and 2, he argues that the evidence is Alegally insufficient@ and Afactually insufficient@ to support the conviction for aggravated assault because the assault
was committed with his hands and fists[1]
and because the victim did not suffer Aserious bodily injury.@  Appellant argues in Issue No.
3 that the judgment should be modified to show that appellant pleaded Anot true@ to the enhancement paragraphs and that there was no plea bargain
agreement.  The State has no objection
to appellant=s request to correct these two clerical
errors.  Issue No. 3 is sustained; and,
pursuant to TEX.R.APP.P. 43.2(b), this court modifies the judgment of the trial
court to correct the clerical errors.








                                                          Sufficiency
of the Evidence

The trial
court, as the finder of fact, was the sole judge of the weight and credibility
of the testimony.  Adelman v. State, 828
S.W.2d 418 (Tex.Cr.App.1992); DeBolt v. State, 604 S.W.2d 164
(Tex.Cr.App.1980); Austin v. State, 794 S.W.2d 408 (Tex.App. - Austin 1990, pet=n ref=d).  The trial court was free to
believe all or any part of the testimony of each of the witnesses.  This court has the authority to disagree
with the fact finder=s
determination Aonly when the record clearly indicates such a
step is necessary to arrest the occurrence of a manifest injustice.@ 
Johnson v. State, 23 S.W.3d 1, 9 (Tex.Cr.App.2000). We review the fact
finder=s weighing of the evidence and cannot
substitute our judgment for that of the fact finder.  Cain v. State, 958 S.W.2d 404 (Tex.Cr.App.1997); Clewis v. State,
922 S.W.2d 126 (Tex.Cr.App.1996).  Due
deference must be given to the fact finder=s determination, particularly concerning the weight and credibility of
the evidence.  Johnson v. State, supra;
Jones v. State, 944 S.W.2d 642 (Tex.Cr.App.1996), cert. den=d, 522 U.S. 832 (1997).

In
reviewing the Alegal sufficiency@ of the evidence, we must look at the
evidence Ain the light most favorable to the
prosecution@ and determine whether any rational trier of
fact could have found the essential elements of the offense beyond a reasonable
doubt.  See, e.g., Jackson v. Virginia,
443 U.S. 307 (1979); Cardenas v. State, 30 S.W.3d 384, 389
(Tex.Cr.App.2000).  In reviewing the Afactual sufficiency@ of the evidence, we must look at the
evidence in a neutral light and determine whether the finding of guilt is so
against the great weight of the evidence that it is Aclearly wrong and unjust.@  See,
e.g., Clewis v. State, supra at 135.

The
definition of a Adeadly weapon@ in TEX. PENAL CODE ANN. ' 1.07(17)(B) (Vernon 1994) includes Aanything that in the manner of its use or intended use is
capable of causing death or serious bodily injury.@ 
(Emphasis added)  While hands and
fists are not per se deadly weapons, the fact finder may find that they were
used as deadly weapons if the evidence supports that finding.  See and compare Turner v. State, 664 S.W.2d
86, 88 (Tex.Cr.App.1983).  This court
has affirmed deadly weapon findings based upon a defendant=s use of his hands or feet in a manner
capable of causing serious bodily injury. 
See Clark v. State, 886 S.W.2d 844, 845 (Tex.App. - Eastland 1994, no
pet=n), 

 

 








which was cited and
followed by Brooks v. State, 900 S.W.2d 468 (Tex.App. - Texarkana 1995, no pet=n). 
In Brooks v. State, supra at 472, 
the Texarkana Court of Appeals stated:

To support
a deadly weapon finding, the State must show only that the accused=s hands in the manner of their use were
capable of causing death or serious bodily injury.  It need not show that the hands actually did cause serious
bodily injury.  (Emphasis added;
Citation omitted)

 

                                                                Relevant
Evidence

The State=s first witness, Kim Chiv, was originally
from Vietnam and has been in this country since 1981.  He was a partner at a grocery store on Jupiter Road, and he was
working there on the evening of July 21, 2000, when a man came in and started
beating a woman.  Chiv said that it was Aterrible@ and that the man was Abeating her with his fists.@  The man left the store, but he
came back in and started beating her again. 
Chiv called the police, and the man left again.  Chiv tried to lock the doors, but the man
came back into the store and started hitting the woman again.   Chiv said that the woman appeared to be in
pain, that she was in danger, and that he was scared.  Chiv was not able to identify appellant, but other testimony
shows that appellant was the man who was beating the woman.  On cross-examination, Chiv said that the
woman never fought back and that no one tried to make the man stop because they
were scared.  








The State=s second witness, Niqua Lasha Jenkins, was
the victim of the assault.  She was the
mother of appellant=s
young daughter.  She and appellant had
lived together, but she moved out because their relationship Ahad gotten bad.@  On July 21, 2000, one of her
friends was taking Jenkins and her three children back to her home from her mom=s house. 
Jenkins asked her friend to stop at the convenience store on Jupiter
Road so that she could get some food and other things.  Her friend stayed in the car with the three
children.  While she was standing in
line to pay for her purchases, appellant came into the store.  Jenkins said that appellant called her a Abitch@ and  hit her with his fists Aso hard [that her] glasses flew halfway
across the store.@  Jenkins said that appellant hit her so hard
that he knocked her into the newspaper rack and that it Adazed@ her.   She said that, after he
hit her and yelled at her, he left the store. 
Then he came back into the store and started hitting her again.  She said that he hit her in the back of her
head, her back, and everywhere.  She
said that he was using both fists, like she was a man, and that he was hitting
her Aharder and harder.@  She
said that appellant had previously told her that he was going to kill her and
that she was in Aso much pain@ that it was worse than when her three children were born.  Then she said that appellant left
again.  After that, he came back into the
store a third time and started hitting her again.  After appellant left for the third time, her friend came in and
found her Ajust laying there.@  Her
friend helped her back to his car.  She
said that she was vomiting and that her daughter was screaming.  The paramedic talked her into going to the
emergency room, and she was admitted to the hospital.  Her parents came to the hospital.  She was in the intensive care unit because she had a ruptured
spleen, and she had to have a blood transfusion because she was bleeding
internally.  She was in the hospital
from July 22 until July 31.  Her jaw was
swollen, and her eye was swollen.  She
had so many knots on her head that she could not comb her hair.  Her jaw was so sore that her teeth
hurt.  When he called her from the jail,
appellant told her to drop the charges or that he would kill her when he got
out.  She admitted on cross-examination
that her jaw was not broken, that she had recovered from the injury to her
spleen, and that she had not seen any doctors for the migraine headaches.

The State=s third witness, Delores Jenkins, was the
mother of the victim of the assault. 
She described the condition of her daughter when she and her husband
went to the emergency room at the hospital on the night of the assault.    

The State=s fourth witness, Walter Dunagin, was the
paramedic who treated the victim on the night of the assault.  He described her injuries for the jury.  The hospital records were also admitted into
evidence.  The paramedic said that the
victim=s left eye was closed, that her jaw was Aswollen so big@ that he thought it was broken, and that she told him that her stomach
was Ahurting real bad.@  She
also told him that her pain was Aworse than giving birth.@  It was his opinion that she
needed to go to the emergency room at the hospital.  Dunagin also gave his opinion that the hands and fists which were
used to cause these injuries had been used as deadly weapons. 

The State=s fifth witness, Geraldo Huante, was the
Dallas Police Officer who was called to the scene of the assault on July 21,
2000.  When he first came into contact
with the victim, she was Acrouched down@; it
was hard to talk to her Abecause she was really hysterical.@  Officer Huante called for the
ambulance, and it was his opinion that the person who assaulted Jenkins had
used his hands in a manner which was capable of causing serious bodily injury
or death.  








This
evidence is both Alegally@ sufficient and Afactually@ sufficient to support the trial court=s finding that appellant used his hands as deadly weapons during the
assault on his former girlfriend. 
Jackson v. Virginia, supra; Cardenas v. State, supra; Johnson v. State,
supra; Cain v. State, supra; and Clewis v. State, supra; see also Turner v.
State, supra; Brooks v. State, supra; and Clark v. State, supra.  Issues Nos. 1 and 2 are overruled.

                                                                This
Court=s Ruling

The
judgment of the trial court is modified to show that there was no plea bargain
and that appellant entered a plea of Anot true@ to the two enhancement paragraphs; as
modified, the judgment of the trial court is affirmed.

 

BOB
DICKENSON

SENIOR
JUSTICE

 

February 28, 2002

Do not publish.  See TEX.R.APP.P. 47.3(b).

Panel consists of:  Arnot, C.J., and

McCall, J., and Dickenson, S.J.[2]











[1]We will discuss the evidence which supports the trial
court=s finding that appellant=s
hands and fists were used as deadly weapons during the assault. 





[2]Bob Dickenson, Retired Justice, Court of Appeals, 11th
District of Texas at Eastland sitting by assignment.