**Affirmed and Memorandum Opinion filed April 4, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-11-00521-CR

---

## ADRIANA MORALES HUTSON, Appellant,

## V.

## THE STATE OF TEXAS, Appellee.

---

**On Appeal from the County Criminal Court at Law No. 9**
**Harris County**
**Trial Court Cause No. 1726957**

---

## M E M O R A N D U M   O P I N I O N

A jury found appellant Adriana Morales Hutson guilty of prostitution. The trial court sentenced Hutson to 180 days' confinement in the Harris County Jail, suspended the confinement, and placed Hutson on community supervision for two years. In one issue on appeal, Hutson contends the evidence is insufficient to support her conviction. We affirm.

# I

On December 19, 2010, Officer K. Hett of the vice division of the Houston Police Department was conducting an undercover investigation at the Pleasure Zone, a business located at 5705 Richmond. The Pleasure Zone was a lingerie and adult novelty store. Within the store was another business, La Femme, which advertised itself as "trashy." The windows of La Femme were blacked out, and its door, which was inside the Pleasure Zone, was locked. Access to La Femme had to be granted by a worker behind the locked door. Once inside, a sign in the reception area advertised "session fees" of $50 for a thirty-minute show, $60 for couples, and $70 for a two-girl show.

Hett knocked on the door to La Femme and was allowed inside, where he met Hutson in the reception area. Hutson was wearing a "lingerie-type" dress. Hutson took Hett down a hallway to room number three. According to Hett, when he went into the room, Hutson told him the fee was $150, but he did not know what that fee included. Inside the room were two nightstands on either side of a futon-style bed. Rubbing oils, Wet Wipes, and towels were on one of the nightstands. Hett did not have the correct change, so he gave Hutson $160.

Hutson told Hett to "get comfortable" and then left the room. Based on Hett's training and experience, he understood "get comfortable" to mean to disrobe. He removed his shirt, pants and shoes, but kept his underwear on. When Hutson returned, she told him she needed to have him "get all the way comfortable," which Hett understood to mean he was to remove his underwear and "get completely naked." Hett complied. Hutson instructed Hett to lay back on the bed, while she began to straddle the upper-thigh area of his right leg. Hutson then pulled the straps of her dress down, exposing her breasts, and placed one of Hett's hands on her breast.

Hett asked Hutson if she had a condom, and Hutson replied that "she did not perform full service." Hett understood her to mean that she would not perform "straight sex." She also said she would not perform oral sex. Hett asked if there was anyone else who would be willing to perform oral sex on him, and Hutson said she would go and check. After a few minutes, Hutson returned and told Hett that none of the girls there were willing to do that, but if he returned the next morning there might be someone who would.

Hett asked what would happen next, and Hutson replied that he would receive "the regular show." Hett asked what that included, and Hutson closed her fist and made a pumping motion, which Hett understood to be the motion for a "hand job" or masturbation. To clarify what she meant by the motion, Hett made the same motion and said "hand job," to which she nodded her head and said, "yes."[1] At trial, Hett explained that in his experience prostitutes are trained to expect that they may be recorded, and so they often use nonverbal communication to avoid incriminating themselves.

Hett agreed to the "hand job," and he asked Hutson if, in addition, he could "go down on her," meaning to perform oral sex on her. According to Hett, Hutson nodded her head in agreement and said, "yes." At that point, Hett believed he had evidence to satisfy the elements of a prostitution case, so he signaled for a backup officer to come in and assist in arresting Hutson.

Hett was the only witness at Hutson's trial. In addition to testifying about his undercover investigation, Hett explained that he was using an audio recording device that night, which captured his interaction with Hutson. The recording was played for the jury. Hett also testified that, based on his training and his

---

[1] At trial, Hett explained that he used slang terms for the proposed sexual activity so that he would not be perceived to be an officer.

3

experience, which included hundreds of vice cases, an agreement had been reached between them in which Hutson was to masturbate him and he was to perform oral sex on her.

II

A

In her sole issue on appeal, Hutson contends that the evidence is factually insufficient to support the jury's verdict. But the Court of Criminal Appeals has held that we apply only one standard—legal sufficiency—to evaluate whether the evidence is sufficient to support a criminal conviction beyond a reasonable doubt. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).

In a legal-sufficiency review, we examine all the evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard of review applies to cases involving both direct and circumstantial evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Although we consider all of the evidence presented at trial, we do not substitute our judgment regarding the weight and credibility of the evidence for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We presume the jury resolved conflicting inferences in favor of the verdict, and defer to that determination. *Clayton*, 235 S.W.3d at 778. We also determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Id.*

4

To secure a conviction for prostitution, the State was required to prove beyond a reasonable doubt that Hutson knowingly agreed to engage in "sexual conduct" for a fee. *See* Tex. Penal Code § 43.02(a)(1).[2] In this case, Hutson was charged by information with knowingly agreeing to engage in the sexual conduct of "deviate sexual intercourse," specifically oral sex, with K. Hett, for a fee. The information was later amended to add a charge of knowingly agreeing to engage in the sexual conduct of "sexual contact," specifically masturbation, with K. Hett, for a fee.

On appeal, Hutson notes the evidence shows that she refused to have sexual intercourse or oral sex with Hett, and that other women in the building also refused. She argues that Hett's testimony that her nonverbal hand gesture constituted an offer of masturbation is mere speculation, and Hett is simply "assuming" that Hutson agreed to masturbate him for a fee of $160. Likewise, Hutson argues, Hett's testimony concerning the exchange in which Hutson allegedly agreed that Hett could perform oral sex on her was merely Hett's assumption based on her "nonverbal body language," and her alleged agreement is not reflected on the audio recording of the encounter. Therefore, Hutson maintains, "the record is void as to any agreement and acceptance."

Here, Hett testified that La Femme advertised the business as "trashy." When Hett entered La Femme, Hutson, dressed in lingerie-type attire, escorted him to a back room. Inside the room were rubbing oils, Wet Wipes, and a bed. Hutson

---

[2] "Sexual conduct" includes "deviate sexual intercourse, sexual contact, and sexual intercourse." Tex. Penal Code § 43.01(4). "Deviate sexual intercourse" means any contact between the genitals of one person and the mouth or anus of another person. *Id*. § 43.01(1). "Sexual contact" means any touching of the anus, breast, or any part of the genitals of another person with intent to arouse or gratify the sexual desire of any person. *Id*. § 43.01(3).

quoted a price of $150 for a "regular show"—an amount that was $100 more than the individual "session fees" advertised—and Hett gave her $160. Hutson instructed Hett to disrobe, and even though she refused to engage in sexual intercourse with or perform oral sex on Hett, she apparently asked other women at the business if they would be willing to fulfill Hett's request. When Hutson returned to the room, she told Hett that if he returned the next morning there might be someone who would perform the requested services. Hutson then told Hett that, for his $160, he would receive the "regular show," which included her masturbating him. Rather than verbalize this agreement, Hett testified that Hutson demonstrated the sex act by "closing her fist" and "pumping it." Hett testified that to confirm his understanding of their agreement, he mimicked the gesture and asked if that meant "hand job," and Hutson nodded her head and answered, "yes." Hett also testified that Hutson agreed to allow him to perform oral sex on her, again by both nodding her head and saying, "yes."

Although Hett was the State's sole witness, the law is well settled that the testimony of a single eyewitness may be legally sufficient to support a conviction. *See, e.g.*, *Davis v. State*, 177 S.W.3d 355, 359 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (citing *Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971)). Moreover, Hett's testimony provided evidence of each element of the offense as charged in the information. He testified that on December 19, 2010, Hutson knowingly agreed to engage in deviate sexual intercourse (oral sex) and sexual contact (masturbation), for money. The jury, as the trier of fact, was the sole judge of Hett's credibility and the weight of his testimony. *Temple*, 390 S.W.3d at 360; *Austin v. State*, 794 S.W.2d 408, 412 (Tex. App.—Austin 1990, pet. ref'd). Based on Hett's testimony, a rational jury could have found beyond a reasonable doubt that Hutson engaged in prostitution.

Hutson argues, however, that her hand gesture was insufficient evidence to prove the specific meaning of masturbation and claims that the record is void as to any agreement or acceptance. The Court of Criminal Appeals held in *Morris v. State* that the evidence was sufficient to sustain a prostitution conviction when the arresting officer testified that, based on his experience, the defendant was agreeing to engage in sexual conduct when she made a "driving motion with her body" and suggested that $20 "would get it." *See* 565 S.W.2d 534, 534–35 (Tex. Crim. App. 1978). In *McCarty v. State*, the court held that a prostitution conviction was supported by sufficient evidence when both the defendant and the arresting officer made implied offers. *See* 616 S.W.2d 194, 196–97 (Tex. Crim. App. 1981).

Moreover, the audio recording of the encounter was played for the jury, and the jury was entitled to evaluate the recording's contents and whether it conflicted with Hett's testimony concerning Hutson's verbal and nonverbal agreements to engage in sexual conduct with Hett. Finally, to the extent that Hutson is also arguing that there was no evidence of an agreement to a fee, Hett testified that he gave Hutson $160 at the start of their "session," and, after negotiations, Hutson agreed to masturbate him as part of the "regular show" for which he had already paid, and she also agreed that he could perform oral sex on her. This evidence is sufficient to support the conclusion that Hutson agreed to engage in sexual conduct with Hett for a fee. *See Austin*, 794 S.W.2d at 413.

Viewing the evidence in the light most favorable to the judgment of conviction, we conclude that a rational jury could have found beyond a reasonable doubt that Hutson engaged in prostitution. We therefore overrule Hutson's sole issue.

\* \* \*

We affirm the trial court's judgment.

/s/           Jeffrey V. Brown
Justice

Panel consists of Justices Frost, Brown, and Busby.

Do Not Publish — TEX. R. APP. P. 47.2(b).