Opinion filed November 30, 2006 

















 
 
  
 
 







 
 
  
 
 




Opinion filed November 30, 2006 

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                 ____________

 

                                       Nos. 11-05-00036-CR & 11-05-00037-CR 

                                                    __________

 

        BRIAN O=NEIL
COOLEY A/K/A DAYREN O=NEAL ARMSTRONG, 

                                                       Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS,
Appellee

 



 

                                         On
Appeals from the 35th District Court

                                                          Brown
 County, Texas

                                    Trial
Court Cause Nos. CR17342 & CR17343

 



 

                                                                   O
P I N I O N

The trial court convicted  Brian O=Neil
Cooley a/k/a Dayren O=Neal
Armstrong of aggravated assault[1]
and of arson.[2]  In each case, appellant entered pleas of Atrue@
to allegations of two prior felony convictions, and the trial court sentenced
him to confinement for 40 years.  We
affirm.

                                                                 Issues
Presented








Appellant=s
sole issue in each case challenges the factual sufficiency of the evidence to
support his conviction.  For the
aggravated assault offense, appellant contends that the evidence is factually
insufficient to support the trial court=s
finding that he knowingly caused serious bodily injury to Karen Hawthorne on
June 10, 2004.  For the arson offense,
appellant argues that the evidence is factually insufficient to support the
trial court=s finding
that he committed the offense of arson on June 10, 2004.  Appellant argues that the State=s witnesses were Aso inconsistent and contradictory@ that their testimony did not amount to
proof beyond a reasonable doubt that he committed either offense.  We disagree.

                                                              Standard
of Review

To determine if the evidence is factually
sufficient, the appellate court reviews all of the evidence in a neutral
light.  Watson v. State, 2006 WL
2956272, at *8 (Tex. Crim. App. Oct. 18, 2006) (overruling in part Zuniga v.
State, 144 S.W.3d 477 (Tex. Crim. App. 2004)); Johnson v. State, 23
S.W.3d 1, 10-11 (Tex. Crim. App. 2000); Cain v. State, 958 S.W.2d 404,
407-08 (Tex. Crim. App. 1997); Clewis v. State, 922 S.W.2d 126, 129
(Tex. Crim. App. 1996).  Then, the
reviewing court determines whether the evidence supporting the verdict is so
weak that the verdict is clearly wrong and manifestly unjust or whether the
verdict is against the great weight and preponderance of the conflicting
evidence.  Watson, 2006 WL
2956272, at *8;  Johnson, 23
S.W.3d at 10-11.

                                                              Evidence
Presented

It is undisputed that on June 10, 2004, appellant
started a fire that seriously burned Karen and charred her home.  It is appellant=s
culpable mental state when he ignited the fire that is disputed.

Karen testified that, at the time of the incident,
appellant and her three sons, Quan, Joseph, and Joe, lived with her in the
house.  On the night in question,  several people had been at the house, and
Karen confronted appellant about dancing with a young lady in the dark.  Appellant became upset and walked off.  About three hours later, appellant came
back.  Karen testified that, when she told
appellant to leave, he started throwing shoes and cassette tapes around their
bedroom.  Karen again told appellant to
get out of the house.  Appellant was very
upset and was cursing.  However,
appellant did not make any threats.  When
appellant told her that he had no place to go, Karen told him that she did not
care.  Appellant put his things in a Abig old green Army bag@ and walked outside.  Karen thought that appellant was gone until
Joseph told her that appellant was on the front porch with a gasoline can.








Karen testified that, when she went out on the
front porch, the porch was wet and that she could smell gasoline.  She saw appellant  bending down with a lighter in his hand.  Together with Quan and Joseph, she tried to
stop appellant.  Karen testified that she
told appellant, A[P]lease,
please don=t do
this.@  Appellant answered her, AI love you.@  Karen asked him, AHow
could you love me and then you try to burn me and the kids up?@ 
Appellant did not answer.

Karen saw appellant touch the lighter to the porch
and ignite the gasoline.  Quan then
yelled, AMama,
roll over, you=re on
fire.@  She was in pain and in shock.  Karen was not really sure what Joseph was
doing at this time.  She remembered Quan
pulling off her pajama bottoms.  When she
looked at her legs, she saw her Askin
laying open.@

Karen testified that she was first taken to Brownwood Regional
Medical Center
and then transferred to Parkland Hospital in Dallas.  She had surgery, skin grafts, hydrotherapy,
and casts to treat her injuries.  She
received physical therapy to help her walk. 
At the time of trial, Karen was still receiving treatment.

Karen denied that the fight was over appellant
having drugs in her home or that she had ever told a doctor that their fight
was over drugs.  Karen did state that
appellant had been Aaggressive
toward [her] a couple of [times],@
but she also stated that she Anever
thought he would do something like that.@  Karen stated that appellant had written her
letters from jail after his arrest in an effort, in her opinion, to get her to
drop the charges.  Karen testified that,
once, appellant had picked her up, threw her down, and then started to drag her
down the street.  Karen further testified
that she had not seen appellant=s  Army bag outside in her yard.








Quan Hawthorne testified that his mother and
appellant were fighting because appellant had had marihuana in the house.  His mother told appellant to pack his bags
and get out.  Quan also stated that his
mother was unhappy because appellant had been dancing in the dark with another
woman.  Appellant became really mad,
packed his things in what looked like an Army duffle bag, and went
outside.  Appellant then ran to the back
of the house, got a can of gasoline, and began pouring gasoline on the front
porch.  Quan testified that appellant Ahad the gas can, steady pouring till
the gas jug was almost empty.@  Quan saw appellant ignite the gasoline on the
front porch.  The flames arose quickly,
and his mother was not aware that she was on fire.  He grabbed his mother, threw her down, and
rolled her to put out the flames.  He
also pulled off her pajamas.  Quan
testified that his mother=s
Askin was just hanging everywhere.@ 
She was in a lot of pain and kept saying, AI
can=t believe he burned me.@ 
Appellant just Atook
off running.@

Quan testified that, during the incident, he had
gone back into the house to put his shoes on, that he had struggled with
appellant over the gasoline can, and that he had made physical contact with
appellant during the struggle.  Also
during this time, Quan stated that his mother told appellant, ANo, don=t
do that.@  Quan testified that appellant Ajust said, >You
F=d up.=@

Joseph Hawthorne testified his mother and
appellant had an argument.  His mother
was yelling, and it looked like appellant was packing.  Appellant took a box of cereal and poured it
in his mother=s
bed.  Joseph stated that he did not know
what the argument was about and that his mother asked appellant to leave.  Appellant told Joseph=s
mother, AYou
shouldn=t have
ever done me like this.@  Appellant went outside, put his bag down on
the sidewalk, and left.  Appellant came
back with a gasoline can and poured gasoline on the walkway all the way up to
the front porch.  Appellant=s bag was out of the way, and it did
not look like appellant was trying to burn his belongings.

Joseph called to his brother Quan and to his
mother that appellant was trying to burn the house down.  Joseph stated that Quan and his mother tried
to push appellant away Abefore
he started doing anything stupid.@  Joseph saw appellant ignite the gasoline on
the porch.  Joseph testified, A[T]he porch and the walkway was in
flames and so was my mom.@  Joseph sprayed his mother with a hose, and
appellant ran off.  Joseph stated that
appellant=s things
did not burn because they were not in the path of the fire.

Dr. Charles Valadez testified that he was the
emergency room physician at Brownwood
 Regional Medical
 Center who treated Karen
at 3:57 a.m.  Karen had second and third
degree burns to her lower legs.  The
burns on her right leg were circumferential meaning that her burns went all
around her lower right leg.  Karen also
had second and third degree burns on her left ankle and foot.  Dr. Valadez stated that Karen=s burns covered 20% of her body,
constituted serious bodily injuries, and warranted her transfer to the Parkland burn unit. 
Dr. Valadez testified that Karen told him that she had fought with
appellant because she did not want drugs in her house and that appellant had
started the fire.








Brownwood Police Sergeant Tracey Edgar testified
that, when she arrived at the house, Karen was screaming that she had been set
on fire, that appellant=s
bag was at the end of the sidewalk, and that there was a gasoline can near the
front porch.  Karen=s skin was sloughing off of her legs.
Sergeant Edgar held Karen down and held a water hose over her legs.  Karen told Sergeant Edgar that she and
appellant had fought, that appellant had packed his things and left, that he
had poured gasoline on the porch and down the steps, and that he had ignited
the gasoline while she was standing in it. 
Sergeant Edgar further testified that Karen said she had found marihuana
and had told appellant that he had to leave.

When Brownwood Patrol Officer Michael Sheedy
arrived, he looked around but was not able to locate appellant.  Brownwood Police Sergeant Dennis Weathermon
testified that he was able to identify appellant from a Taco Bueno cap in
appellant=s
bag.  Sergeant Weathermon received
information that appellant had made a phone call to a relative and was able to
trace the number to the Whistle Stop Grocery in Blanket where appellant was
then arrested.  Brownwood City Fire
Marshal Gene ABuddy@ Wells Preston Jr. testified that he
investigated the fire.  Marshal Preston
found a pour pattern on the sidewalk and front porch of the home.  There were splatter and burn marks on the
wall of the home.  A gasoline can was
upright in the front yard when Marshal Preston arrived.  Marshal Preston testified that the fire was a
Adeliberate fire.@  Karen told Marshal Preston that Ait all started over [appellant]
bringing drugs into the house.@

Appellant testified that he was convicted in 1992
and again in 1993 for possession with the intent to deliver a controlled
substance.  After his release from
prison, he lived in a halfway house in Dallas
and then moved to a halfway house in Brownwood.  Karen was first his friend and later became
his girlfriend.  On the night in
question, Karen and appellant had been drinking.  They were each supposed to get three beers,
but he only got two.  Appellant testified
that Karen had also drank about a fifth and a half of Boone=s Farm wine.  The couple had an argument because Karen
thought he had been dancing with a girl. 
Appellant testified that he did not like to argue and so he left for
about fifteen minutes.  When he returned,
Karen told him to Aget [his]
s--t and leave.@

Appellant stated that he had too many belongings
to carry and that he only owned a bicycle. 
Appellant took his belongings Aout@ Aby
the street@ to sort
them.  He had decided to burn the things
that he did not want to keep.  Joseph saw
him put gasoline on the sidewalk but did not say anything. Appellant told Quan
that he was going to burn his clothes. 
Gasoline only spilled on the porch when Quan pulled on the gas can.  Quan also caused gasoline to spilled on
him.  When Karen came out and asked him
why there was gasoline on her porch and steps, appellant told her that he was
not going to burn the house down.








Appellant testified that his intent was to burn
his belongings and that he had no intention of injuring Karen or of harming her
home.  Appellant also stated that he
tried to light a fire that night but that he never Areally@ did. 
When he tried to burn his clothes, Karen jumped in the middle of what he
was doing.  Appellant testified that that
was when he told her, ADon=t f--k with me like that.@

Appellant testified that Karen was concerned that,
if he burned his clothes, her porch and steps would catch fire.  To reassure her that there was Ano other gas out [there] connected from
[his] bag to her porch,@
appellant struck the lighter.  The gas
ignited.  Karen was out in the yard at
the time and tried to move to the porch. 
Appellant testified that he was afraid that she might catch fire and
that he Abarricaded@ her against a pillar of the
house.  He turned and hit his knee
against the pillar.  Karen pushed him off
of her, and his left sleeve caught fire. 
Karen stumbled, and her right leg caught fire.  At first, the fire was just at the base of
her foot.  Appellant testified that, as
Karen kicked, the fire spread up her right leg and over to her left leg.

Appellant testified that he left Karen=s front yard and went across the street
where he sat down in the neighbor=s
yard behind a chain fence.  The police
did not look across the street, and no neighbors came over.  He only left Karen=s
yard because Quan and Joseph were screaming at him.  He did not leave the neighborhood because he
was concerned about Karen=s
well-being.  Appellant testified that he
later left Brownwood
because he was Adismayed,@ he was Ahurt,@ he did not want to talk to anyone, and
he Awas disbelieving that this had
happened.@  He tried to get a ride to Dallas, and a man dropped him off in Blanket
where he was arrested.

Appellant testified that he had never hit Karen,
that they Agot along
generally fairly well,@
and that he had never threatened her. 
One time, Karen thought a girl was Acom[ing]
on to [him],@ and
Karen started to scream and yell.  He did
not think anyone Aneed[ed]
to be hearing that,@ so
appellant picked Karen up, put her on his shoulder, and started to walk
away.  When Karen screamed that she
wanted down, appellant put her down.  She
was screaming and swinging her arms at him. 
Appellant grabbed Karen=s
arms, Atook her
down,@ and sat
on top of her.  The police came, and
Karen Agot right
then.@  She told the police that there was no problem
between she and appellant.








Appellant further testified that he had attempted
to communicate with Karen after the fire. He called once, and her boyfriend
answered.  However, he thought that he
was still her boyfriend, and the man threatened him.  Appellant also testified that he wrote Karen
letters telling her that he was sorry she had been burned and that he had not
meant for that to happen to her. 
Appellant stated that he should have thrown his extra things away and
that, if he had never thought of burning them, Athis@ would not have happened.

                                                                        Analysis

The trial court, as the finder of fact, is the
sole judge of the weight and credibility of the testimony.  Adelman v. State, 828 S.W.2d 418 (Tex.
Crim. App. 1992); DeBolt v. State, 604 S.W.2d 164 (Tex. Crim. App.
1980); Austin v. State, 794 S.W.2d 408 (Tex. App.CAustin
1990, pet. ref=d). We
review the fact-finder=s
weighing of the evidence and cannot substitute our judgment for that of the
fact-finder.  Cain, 958 S.W.2d at
407; Clewis, 922 S.W.2d at 133. 
Due deference must be given to the fact-finder=s
determination, particularly concerning the weight and credibility of the
evidence.  Johnson, 23 S.W.3d at
9; Jones v. State, 944 S.W.2d 642 (Tex. Crim. App. 1996).  This court has the authority to disagree with
the fact-finder=s
determination Aonly when
the record clearly indicates such a step is necessary to arrest the occurrence
of a manifest injustice.@  Johnson, 23 S.W.3d at 9.

Appellant was charged with Aintentionally,
knowingly or recklessly@
causing serious bodily injury to Karen by igniting a combustible liquid causing
Karen to be burned and with starting a fire or causing an explosion by pouring
a combustible liquid on the porch or steps of Karen=s
residence.  The trial court stated in
open court that, while it did not find that the proof established that
appellant acted intentionally, it did find that the proof established he acted
knowingly in committing the aggravated assault. 
The trial court further stated that the proof did not establish an
explosion but did establish beyond a reasonable doubt that appellant started a
fire by pouring a combustible liquid on the porch or steps of Karen=s residence.  The trial court then found appellant guilty
of aggravated assault and of arson as charged in the indictments.








After reviewing all of the evidence in a neutral light,
we do not find that the evidence is so weak that the verdicts are clearly wrong
and manifestly unjust.  The record
supports the trial court=s
finding that appellant acted knowingly when he ignited the lighter and held it
to the area where gasoline was present and that appellant committed the offense
of arson.  Likewise, we do not find that
the verdicts are against the great weight and preponderance of the conflicting
evidence of appellant=s
testimony that he acted only to reassure Karen and to protect her; of Joseph=s, Quan=s,
and Karen=s
testimony concerning the exact sequence of their movements in the front yard;
or of the testimony concerning the reason for Karen and appellant=s argument.  The sole issue in each case is overruled.

                                                                     Conclusion

The judgments of the trial court are affirmed.

 

PER CURIAM

 

November
30, 2006     

Do not publish.  See
Tex. R. App. P. 47.2(b).

Panel
consists of:  Wright, C.J.,

McCall,
J., and Strange, J.











[1]Cause No. 11-05-00036-CR.





[2]Cause No. 11-05-00037-CR.