**Opinion issued April 29, 2025.**



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

**NO. 01-24-00279-CR**
_____

**SOHRAB MEHDI, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 240th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 23-DCR-102394**

---

## O P I N I O N

After a bench trial, the trial court found Appellant Sohrab Mehdi guilty of the state jail felony offense of solicitation of prostitution. The trial court sentenced Mehdi to two years' imprisonment but suspended the sentence and placed Mehdi on

community supervision for three years. In his sole issue on appeal, Mehdi argues there is insufficient evidence supporting his conviction because no rational factfinder could have found beyond a reasonable doubt that Mehdi knowingly agreed to pay a fee to another for the purpose of engaging in sexual conduct.

We affirm the trial court's judgment.

## Background

In January 2023, Lieutenant David Hall, an investigator with the Fort Bend County District Attorney's office's human trafficking division, conducted what Hall described as a "demand suppression" operation to "arrest sex buyers" at an "illicit massage spa." Appellant Sohrab Mehdi was arrested during the undercover operation and charged with solicitation of prostition. Mehdi waived his right to a jury trial.

## Trial Testimony

During the bench trial, Hall testified that he conducted an undercover operation at #1 Foot Massage, a massage parlor in Sugar Land, Texas on January 27, 2023. According to Hall, #1 Foot Massage had been shut down after the Fort Bend County District Attorney's office learned the "massage business was operating as an illicit sex spa." Hall contacted the management company of the shopping center where #1 Foot Massage was located and the management company allowed Hall to use the storefront to conduct undercover "demand suppression" operations.

2

Hall testified that he chose #1 Foot Massage for the January 2023 undercover operation because a previous operation at the same location had been successful and resulted in a prostitution case.

When asked how he prepared the location for the undercover operation, Hall testified he put an "open" sign on the door to indicate to prospective clients that the business was open, moved in furniture, and assisted with the decoration of the business. According to Hall, they tried to replicate the same decor as other illicit massage spas. Hall testified that the massage room had a massage table, blankets, a towel, a chair, lotions, and oils. There was also a photograph hanging on the wall showing a nude women in a sexual pose, and lingerie hanging from hooks inside the massage room. The massage room, hallway, and reception area were all equipped with audio/video recording devices. Hall testified that they hung sexually explicit photographs and artwork on the walls to set the mood and convey the sexual nature of the business to prospective clients. Photographs of the explicit photographs and art work were admitted into evidence. Hall testified it was "not normal if you go to a reputable massage spa to see photos like that."

Hall testified that the front door to the business was kept locked and they installed a doorbell so people would not walk in without the officers being prepared. One undercover officer posed as a receptionist and greeted prospective clients as they walked in the front door and took them back to the massage room where they

3

were greeted by another undercover officer. The undercover officers wore nighttime clothing or lingerie to convey to suspects that the business was an illicit spa because, according to Hall, a massuse in a legitimate massage parlor does not give massages dressed in lingerie.

Hall testified that Mehdi was arrested during the January 27, 2023 demand suppression operation.

Detective Kiki Wang with the Houston Police Department's Human Trafficking Unit testified that she participated in the January 27, 2023 undercover operation by posing as the spa's female manager. Detective Melanie Jones with the Houston Police Department and Officer Tiffany Juarez with the Missouri City Police Department were the operation's "decoy officers." Wang testified that as the spa's manager, her role in the operation was to make initial contact with the client, find out what kind of girl he wanted, and then arrange for one of the decoy officers to meet Mehdi in the massage room. Wang testified that unlike a legitimate massage spa client, an illicit massage parlor client typically requests a specific type of woman or girl, based on race or the color of hair.

On January 27, 2023, Mehdi visited #1 Foot Massage at approximately 1:40 p.m. and again at 6:30 p.m. When Mehdi arrived at the massage spa the first time, Jones unlocked the front door for Mehdi. Wang met Mehdi in the reception area and escorted him to the massage room. Mehdi asked Wang if there were any black

4

ladies, and Wang told him there were and she walked out of the massage room to get Juarez. Wang had no further interactions with Mehdi until he left the spa at 1:43 p.m. As he left, Mehdi told Wang that he would be back later. Wang testified that illicit massage parlors lock their doors, but legitimate businesses in Harris County cannot lock their doors during regular business hours. She did not know if businesses in Fort Bend County, where #1 Foot Massage was located, were also prohibited from locking their doors.

When Mehdi arrived at the spa around 6:30 p.m. that evening, Wang and Jones greeted Mehdi in the reception area and Jones escorted Mehdi to a massage room. Wang had no further interactions with Mehdi. On cross-examination, Wang testified that if a prospective client asks what services the massage spa provides, she lists them for the client. Mehdi did not ask Wang what services #1 Foot Massage offered or request any sexual services.

Detective Melanie Jones with the Houston Police Department's vice division testified that she works undercover investigating mostly "prostitution-related crimes." Jones also created and taught classes for female undercover officers investigating such offenses, including an "advanced decoy school" focused on preparing officers to work undercover in "hotel, spas, and pimp cases." Jones testified that clients who frequent illicit spas generally prefer "a quieter approach, a more simple approach" than those who approach sex workers on the street, and the

women who work in illicit spas tend to communicate with clients using gestures or other nonverbal communication.

Jones testified that Mehdi visited the spa twice on January 27, 2023. Although she opened the front door for Mehdi the first time he visited the spa, she did not have any further interaction with Mehdi during his visit. According to Jones, Mehdi left the spa "on his own" and returned later that day. When Mehdi arrived at the spa the second time, he asked for Jones, and she agreed to accompany him to a massage room. A video and a transcript of the video recording of Jones' encounter with Mehdi in the massage room were admitted into evidence.

In the video, Jones is wearing a robe that is tied around her waist. The robe come downs to her mid-thigh and her robe is open, showing a low-cut top that reveals cleavage. Jones and Mehdi are standing next to the massage table facing each other. Jones asks Mehdi if he has been to the spa before, and he responds he was there some time ago. After making small talk, Jones gestures to the small table in the corner of the room and asks Mehdi, "Do you want to put your. . .?" Mehdi moves closer to Jones and answers, "Tell me." The following exchange followed:

Jones:  Well what did you do last time?

Mehdi:  100.

Jones:  100?

Mehdi:  For like 20 minutes.

6

Jones:      For 20 minutes. Okay and what do you need in your 20 minutes?

Mehdi:      What do you provide?

Jones:      Umm, for 100? Um, well, we could do everything for 20 minutes.

Mehdi:      [inaudible].

Jones:      What is it that you like, baby? Sit down.

Jones touches Mehdi's arm and guides him to a nearby chair. Instead of sitting, Mehdi puts his right hand on Jones' left side above her waist, grabs Jones' breasts with his left hand, and tells her, "You tell me." Jones guides Mehdi's hands away from her body and helps him take off his jacket. As she hangs Mehdi's jacket on a wall hook, Jones asks Mehdi what he received for his previous twenty-minute session. Mehdi, whose response is inaudible, shrugs and gestures at Jones. Jones points towards the small table in the corner of the room and asks Mehdi if he wants to put his $100 on the table. Mehdi puts the money on the table and Jones walks over to the table, counts the money, and places it back down on the table. As she removes a condom from a small jar on the table, Jones tells Mehdi, "Ok and then we gotta use a condom for the fuck and the suck, okay?" Mehdi nods his head up and down twice in apparent agreement. Jones testified that in this context, "fuck" referred to straight sexual intercourse and "suck" referred to deviate sexual intercourse. Jones testified that a legitimate massage spa does not have condoms on

7

display. Jones asked Mehdi if he was going to leave his mask on. Mehdi walks up behind Jones, extends his right arm behind Jones, and leans towards her stating, "I don't know. Maybe not." Jones testified that when Mehdi approached her, he "actually reached and grabbed [her] buttocks during the conversation." Jones then places the condom on the table and tells Mehdi she is going to talk to Wang and brush her teeth. She then walks out of the room. Mehdi leans back on the massage table. After a few seconds, he picks up his money, picks up a condom on the floor, and put the money and condom in his pocket. As he is doing this, the police enter the room to arrest him. Mehdi tells the police that he was leaving.

Jones testified that she tried to give Mehdi an opportunity to tell her what services he wanted when they were in the massage room, but she was having a hard time hearing him because he was mumbling and wearing a mask. She testified that "when [Mehdi] grabbed [her] breast, it was evident what he was there for," and based on his conduct, Jones understood that when Mehdi grabbed her breast, he Mehdi "wanted to have a conversation about something that was sexual in nature." Jones testified that when she asked Mehdi to use a condom for the "f*** and suck," Mehdi nodded "his head up and down indicating yes." The State asked:

> State:      Okay. So at this point he has – he's grabbed your breast and touched your behind and he's nodded his head in agreement when you said there would need to be the use of a condom for the f*** and the suck?

> Jones:      Yes, ma'am.

8

State:        Did you interpret this to mean that he was agreeing to pay you U.S. currency for the sex acts you described?

Jones:        Yes, ma'am.

On cross-examination, Jones testified that Mehdi did not request a specific service. After Mehdi's counsel showed Jones a photograph of the exterior of the business to refresh her memory, Jones agreed that the business was "advertised as a massage entity" and she stated it would be reasonable for someone who had not negotiated a specific service to believe they would be receiving a massage. When asked if Mehdi could have thought he would only be receiving a massage for the $100 he placed on the table, Jones answered, "I don't know what he would have thought."

Jones testified that although Mehdi did not verbally request anything sexual, she knew he was asking for something sexual when he grabbed her breasts and buttocks. Although she touched Mehdi first when she reached out and touched his arm, Jones denied that her gesture could be interpreted as an "invitation" because she was merely directing him towards the chair and asking him to sit down. She testified that Mehdi saw the condom when she took it out of the container, and she did not know if he had noticed the condoms beforehand.

At the conclusion of the bench trial, the trial judge found Mehdi guilty of the state jail felony offense of solicitation of prostitution. After a punishment hearing,

the trial court sentenced Mehdi to two years' imprisonment, but the trial court suspended the sentence and placed Mehdi on community supervision for three years.

This appeal followed.

## Sufficiency of the Evidence

In his sole issue on appeal, Mehdi argues there is insufficient evidence supporting his conviction for solicitation of prostitution because the record reflects that he agreed to pay Jones $100 for a massage, not sexual conduct. According to Mehdi, Jones did not offer to engage in any sexual conduct with him until after he agreed to pay her $100 for a massage and handed her the money. Mehdi argues that based on this evidence, no rational factfinder could have found beyond a reasonable doubt that he knowingly agreed to pay money to Jones for the purpose of engaging in sexual conduct.

The State argues that evidence of Mehdi's and Jones' statements and non-verbal communications—including evidence that Mehdi grabbed Jones' breasts after she asked him what he wanted for his $100, Mehdi nodding in agreement when Jones informed him that he would have to wear a condom for the "f*** and suck," and Mehdi grabbing her buttocks after he placed the $100 on the table—is sufficient to support the trial court's finding beyond a reasonable doubt that Mehdi agreed to pay Jones $100 to engage in sexual conduct with him.

## A.     Standard of Review and Applicable Law

We apply the legal sufficiency standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979) in determining whether the evidence is sufficient to support each element of a criminal offense that the state must prove beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010).  We review the legal sufficiency of the evidence by determining "whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Sanders v. State*, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003).  Under a legal sufficiency review, "our role is not to become a thirteenth juror." *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007) (quoting *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999)).  "This Court may not re-evaluate the weight and credibility of the record evidence and thereby substitute our judgment for that of the fact-finder." *Williams*, 235 S.W.3d at 750 (quoting *Dewberry*, 4 S.W.3d at 740).  Our role is to act as a "due process safeguard," requiring us to "ensure that the evidence presented actually supports a conclusion that the defendant committed" the offense of which he is accused. *Williams*, 235 S.W.3d at 750.  We may consider both direct and circumstantial evidence in our legal sufficiency analysis, as well as any reasonable inferences that may be drawn from the evidence. *Id.*

11

We examine all evidence in the light most favorable to the jury's verdict to determine whether any "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *Williams*, 235 S.W.3d at 750. "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and "the standard of review on appeal is the same for both direct and circumstantial evidence cases." *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010) (quoting *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)); *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (stating "circumstantial evidence alone can be sufficient to establish guilt").

The trier of fact is the sole judge of the weight and credibility of the evidence. *See Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018). We thus defer to the jury to fairly "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. A reviewing court, faced with a record of historical facts supporting conflicting inferences, must presume the factfinder resolved any such conflict in favor of the prosecution, and must defer to that resolution. *Id*. at 326.

Texas Penal Code Section 43.021 states that a person commits solicitation of prostitution if "the person knowingly offers or agrees to pay a fee to another person for the purpose of engaging in sexual conduct with that person or another." TEX. PENAL CODE 43.021(a).

**B.    Analysis**

Mehdi argues that no rational factfinder could have found beyond a reasonable doubt that he knowingly agreed to pay a fee to Jones for the purpose of engaging in sexual conduct because the evidence demonstrates he only agreed to pay Jones $100 for massage services.  According to Mehdi, it was reasonable for him to believe that he was agreeing to pay Jones for a non-sexual massage because the spa was advertised as a foot massage business and he and Jones negotiated and agreed upon a price for unspecified services before anything sexual was discussed.  Mehdi argues that although Jones asked if he would wear a condom for a "f\*\*\* and suck" and he nodded his head up and down, he did not agree to pay an additional fee for that service and Jones' offer to engage in this sexual conduct was not included in the $100 he already had agreed paid to pay Jones for a massage.  He argues that although he nodded his head after Jones mentioned the "f\*\*\* and suck," the record reflects that he merely nodded that he understood Jones' comment, and "in response to this material change to the offer for services — [he] reclaimed his money and began to exit the massage room."

The State argues there is sufficient evidence supporting Mehdi's conviction for solicitation of prostitution based on Mehdi's and Jones' statements and non-verbal communications.  According to the State, Mehdi visited #1 Foot Massage twice on January 27, 2023.  He thus had ample opportunity to note that the business'

13

front door was kept locked and to see the sexual photos on the wall, the jar of condoms inside the massage room, and the undercover officers dressed in lingerie, all of which indicate that the business is an illicit massage parlor, as opposed to a legitimate spa. The State argues that the record reflects also that Mehdi offered to pay Jones $100 for twenty minutes of services, which Jones told him would include "everything," and when she asked Mehdi what he wanted for those twenty minutes, Mehdi grabbed her breasts and told her, "You tell me." Mehdi also nodded in agreement when Jones told him he had to wear a condom for a "f*** and suck" and when Jones asked Mehdi if he planned to leave his mask on, Mehdi leaned towards Jones and grabbed her buttocks. The State argues that based on this evidence, the trial court, as the sole factfinder, could have found beyond a reasonable doubt that Mehdi agreed to pay a fee to Jones for the purpose of engaging in sexual conduct.

The opinion in *Willis v. State*, No. 14-09-00041-CR, 2010 WL 1957031 (Tex. App.—Houston [14th Dist.] May 18, 2010, no pet.) (mem. op., not designated for publication) is instructive with respect to the sufficiency evidence in Mehdi's case. In *Willis*, the defendant was charged with committing prostitution by soliciting an undercover female officer in a public place to engage with him in sexual conduct for hire. *See id.* at *1.[1] At trial, Officer Thomas, the undercover female officer, testified

---

[1]    Solicitation of prostitution was not a separate offense under the Texas Penal Code when *Willis v. State* was issued. Rather, solicitation of prostitution was identified as a manner and means of committing the offense of prostitution pursuant to the

14

that she was standing on a public street when Willis pulled up beside her in his truck and asked if he could give her a ride. *Id.* at *2. Officer Thomas replied, "It's going to cost you," and Willis asked, "How much?" According to Officer Thomas, she told Willis it would be "10 for head," referring to oral sex, and "20 for sex," referring to "straight sex," and he replied, "Okay." Officer Thomas testified that she told Willis to drive around the block and she would meet him on the opposite corner, and he complied. *Id.* Willis, who took the stand in his defense, testified that he approached Thomas because he thought she may have had car problems, or some other distress, and he asked her if she needed help. *Id.* He became scared after she quoted the prices for sexual acts, and he sped away. *Id.* He denied asking Officer Thomas "how much," agreeing to engage in any sexual acts with Officer Thomas, or attempting to engage her services as a prostitute. *Id.* The court of appeals observed that the case "essentially turned on the credibility of witnesses," and although Willis denied attempting to or agreeing to engage in sexual acts with

version of Section 43.02 of the Penal Code then in effect. The relevant version of Section 43.02(a) stated that a person commits the offense of prostitution "if he knowingly: (1) offers to engage, agrees to engage, or engages in sexual conduct for a fee; or (2) solicits another in a public place to engage with him in sexual conduct for hire." Act of May 24, 1973, 63rd Leg., ch. 399, § 1, 1973 Tex. Gen. Laws 883 (amended 2023) (current version at TEX. PENAL CODE § 43.02(a)). Willis was charged with committing prostitution by the second manner and means— "solicit[ing] another in a public place to engage with him in sexual conduct for hire." *See id.*; *see also Willis v. State*, No. 14-09-00041-CR, 2010 WL 1957031, at *1 (Tex. App.—Houston [14th Dist.] May 18, 2010, no pet.) (mem. op., not designated for publication).

Officer Thomas, the jury, as the sole factfinder, was free to credit Officer Thomas' testimony over Willis' testimony. *Id.*; *see also Jackson*, 443 U.S. at 319, 326 (stating reviewing courts presume factfinder resolved any conflicting inferences in favor of prosecution and defer to factfinder's resolution of conflicts in testimony and conflicting inferences). The court held that based on Officer Thomas' testimony, the jury "could have rationally concluded that [Willis] offered to hire Officer Thomas for the sexual acts she mentioned by initiating the contact with her, inquiring about costs, responding 'okay' when she quoted the sexual acts and prices, and complying with her instruction to meet her on the opposite corner." *Willis*, 2010 WL 1957031, at *2.

Like the defendant in *Willis*, the record reflects Mehdi initiated contact with Jones by requesting her as his service provider when he visited #1 Foot Massage for the second time on January 27, 2023, offering to pay Jones $100 for twenty minutes of unspecified services, and nodding his head in agreement when she asked him to wear a condom for the "f*** and suck." Although Mehdi argues he was conveying only that he understood Jones' comment when he nodded his head, as opposed to agreeing to wear a condom, it was the trial court's role as factfinder to resolve any conflicting inferences in the evidence, and as the reviewing court, we presume the trial court resolved any conflict in favor of its judgment and we defer to the trial court's resolution of this issue. *See Jackson*, 443 U.S. at 326 (stating reviewing

16

courts defer to factfinder's resolution of conflicts in testimony and conflicting inferences).

Although Mehdi did not verbalize his agreement to engage in sexual acts with Jones, Jones testified that Mehdi grabbed her breast, touched her buttocks, and nodded his head in agreement when she told him he needed to wear a condom for the "f*** and the suck" and she understood Mehdi's actions to mean that he was agreeing to engage in sexual conduct with her for a fee. In addition to Jones' testimony, the trial court also had the benefit of the audio and visual recording of Jones' and Mehdi's interactions in the massage room, and the transcript of their conversation, both of which were admitted into evidence. *See Brown v. State*, No. 01-10-00791-CR, 2012 WL 1649852, at *4 (Tex. App.—Houston [1st Dist.] May 10, 2012, no pet.) (mem. op., not designated for publication) (holding evidence sufficient to support Brown's conviction for prostitution because "jury could reasonably infer that Brown agreed to participate in sexual conduct for a fee" based on officer's testimony and audio recording of Brown's conversation with officer); *see also Morris v. State*, 565 S.W.2d 534, 535 (Tex. Crim. App. 1978) (holding evidence sufficient to support conviction for prostitution based on officer's testimony Morris approached him, non-verbally offered to have sexual intercourse with him, and when Morris asked how much money he had, officer told Morris he had $20 and she replied, "That would get it"); *Willis*, 2010 WL 1957031, at *2

17

(holding evidence sufficient to support conviction for prostitution based on officer's testimony).

Mehdi argues that the Court of Appeals' opinions in *Trippell v. State*, 535 S.W.2d 178 (Tex. Crim. App. 1976) and *Roper v. State*, 652 S.W.2d 398 (Tex. Crim. App. 1983) "seem to stand for the proposition that where a stated price is agreed upon in exchange for services that are not explicitly sexual in nature (such as massage), some additional fee must be agreed upon in order to render any subsequent agreement for sexual services prostitution because engaged in for a fee." According to Mehdi, the record reflects he agreed to pay Jones $100 only for massage services, and although he nodded his head in agreement when Jones asked him to wear a condom for the "f*** and suck," he did not agree to pay an additional fee for the sexual services which were not included in the initial agreement. The State argues that *Trippell* and *Roper* are distinguishable from the facts in this case and the opinion in *Austin v. State*, 794 S.W.2d 408 (Tex. App.—Austin 1990, pet. ref'd) is more on point. We agree with the State.

In *Trippell v. State*, a spa owner was convicted of the offense of promotion of prostitution after a woman working in Trippell's spa performed a sexual act on a private citizen who was cooperating with the police's investigation of the spa.

*Trippell*, 535 S.W.2d at 178–79.[2] At trial, Smith, the private citizen who cooperated with the police investigation, testified that when he "indicated [to Trippell that] he wanted a massage," Trippell told him it would cost $20. *See id*. at 179. After Smith chose Welsh as his masseuse, Welsh took Smith to a room, collected $20 from Smith, and left the room. When Welsh returned to the room a few minutes later, she massaged Smith's back while she was fully clothed. Welsh asked Smith what he wanted and after he told her he wanted a "local," Welsh performed a specific sexual act on Smith, and then continued to massage his back.

Trippell argued on appeal that the trial court had erred in denying her the right to effective confrontation and cross-examination of Smith. *Id.* After reversing Trippell's conviction on this basis, the Court of Criminal Appeals stated in dicta:

> Although this case is reversed on appellant's fourth ground of error only there is a serious question as to the sufficiency of the evidence. Smith testified that he paid twenty dollars for a massage and that no further money was exchanged. Smith stated that it was only after the massage had begun that Welsh asked him what he wanted. The witness testified

---

[2]   Although Trippell was charged with committing the third-degree felony offense of aggravated promotion of prostitution, and the jury found her guilty of the offense, the trial court set aside the guilty verdict and entered a judgment of guilty of the Class A misdemeanor offense of promotion of prostitution. *See Trippell v. State*, 535 S.W.2d 178, 179 (Tex. Crim. App. 1976). *Compare* TEX. PENAL CODE § 43.03 (stating person commits Class A misdemeanor offense of promotion of prostitution if person knowingly "receives money or other property pursuant to an agreement to participate in the proceeds of prostitution" or "solicits another to engage in sexual conduct with another person for compensation") *with id.* § 43.04 (stating person commits third-degree felony offense of promotion of prostitution if person knowingly "owns, invests in, finances, controls, supervises, or manages a prostitution enterprise that uses two or more prostitutes").

> that he asked for a local. Having already paid for the massage it is difficult to characterize Welsh's actions as prostitution under V.T.C.A. Penal Code, Sec. 43.02. It is even more difficult to then impute Welsh's actions if they be an offense to [Trippell] herein, or to rely on Smith's testimony to show that the Spa was a 'prostitution enterprise' as required by V.T.C.A. Penal Code, Sec. 43.04.

*Id.* at 181. Unlike in *Trippell*, Mehdi did not request a "massage" and Jones did not provide any non-sexual services to Mehdi before he grabbed her breasts and buttocks and nodded his head in agreement when Jones asked him to use a condom.

Mehdi's reliance on *Roper v. State* is similarly misplaced. In *Roper*, the defendants Roper and Pierre were convicted of prostitution after they engaged in sexual conduct with two undercover officers. When two undercover male officers went to the massage business where Roper and Pierre worked, the officers were greeted by Brownwell who told the officers they could have "contact" sessions or "no contact" sessions. *Roper*, 652 S.W.2d at 398. Both undercover officers requested "contact" sessions and they each paid Brownwell $35. *Id.* One officer went to a room with Roper and the other officer went to another room with the Pierre, where both officers engaged in sexual conduct with the respective defendant. *Id.* at 398–99. Although a jury found Roper and Pierre guilty of prostitution, the Court of Criminal Appeals reversed their convictions based on insufficient evidence. The court held there was insufficient evidence Roper and Pierre engaged in sexual conduct "for a fee" because (1) the officers paid Brownwell, not Roper and Pierre personally, (2) the court interpreted the officers' payment for two "contact sessions"

20

as payment for massages, and not for the sexual conduct the defendants engaged in later, and (3) there was no evidence that either Roper or Pierre "negotiated a price for her sexual favors" or "received money for her sexual favors." *Id.* at 399. Unlike in *Roper*, Mehdi and Jones negotiated a price for Jones' services and Mehdi paid the $100 to Jones personally.

As the State argues, this case is more like *Austin*. In that case, the undercover officer testified that he visited the massage parlor where Austin was working and Austin took him to a private room where he agreed to pay $130 for a "Swedish Deep Muscle Rub," a term the officer testified was "a catch phrase" or "key words" for prostitution. *Austin*, 794 S.W.2d at 411. After massaging the officer for twenty minutes, Austin asked him if he would "like to end the session." *Id.* When the officer asked if he would "get more than just a rub" if they ended the session, Austin answered yes and told him that he did not need to pay an additional fee. *Id.* After this conversation, Austin and the officer discussed which specific sex acts would be included in his original payment and they agreed on sexual intercourse. *Id.* On appeal, Austin argued there was insufficient evidence supporting her conviction because the $130 "session" the officer paid for ended before she agreed to engage in sexual intercourse with the officer, and thus she "was no longer being compensated for her personal services," and "she made no effort to obtain compensation for any sexual activity." *Id.* at 412.

21

Relying on *Young Sun Lee v. State*, 681 S.W.2d 656 (Tex. App.—Houston [14th Dist.] 1984, pet. ref'd), the court of appeals held there was sufficient evidence supporting the jury's finding Austin offered or agreed to perform sexual conduct for a fee because Austin "negotiated the arrangements herself and personally handled the money" and her "later response that no further money was necessary because it is 'all taken care of' is similar to that of Lee's response to the vice squad officer." *Austin*, 794 S.W.2d at 413 (citing *Lee* and noting "there is no requirement under [Section 43.02(a)] for the defendant to negotiate a price . . . nor is there a need for money to exchange hands"); *Lee*, 681 S.W.2d at 661 (holding evidence was sufficient to show Lee offered or agreed to sexual conduct for fee because record reflected Lee was present when other woman told officer that price was $60 and officer gave other woman money, and later, when officer told Lee that he wanted specific sexual act, Lee told him it was "covered in the other money you gave").[3]

---

[3] When *Austin v. State*, 794 S.W.2d 408 (Tex. App.—Austin 1990, pet. ref'd) was issued in 1990, Section 43.02(a) stated:

(a) A person commits [prostitution] if he knowingly:

(1) offers to engage, agrees to engage, or engages in sexual conduct for a fee; or

(2) solicits another in a public place to engage with him in sexual conduct for hire.

Act of May 24, 1973, 63rd Leg., ch. 399, § 1, 1973 Tex. Gen. Laws 883 (amended 2023) (current version at TEX. PENAL CODE § 43.02(a)).

Although Austin was not relying on either opinion, the court questioned the "continued viability" of *Trippell* and *Roper*, and held that, even if the opinions were still good law, they were "distinguishable on their facts from the instant case." Discussing *Trippell* and *Roper*, the court of appeals stated:

> Interestingly enough, there is no requirement under the statute for the defendant to negotiate a price, *see Lee,* 681 S.W.2d 656, nor is there a need for money to exchange hands. In fact, in *West*, the officer paid the defendant for the massage and then again for her to undress, but the opinion does not show he paid her the later quoted prices for sexual conduct as *Roper* would indicate. Neither *Trippell* (pre-*Jackson v. Virginia*) nor *Roper* (post-*Jackson v. Virginia*) applied any standard of review to determine the sufficiency of the evidence. Assuming their continued viability, they are distinguishable on their facts from the instant case.

*Austin*, 794 S.W.2d at 413. Like our sister court in *Austin*, we question the continued viability of *Trippell* and *Roper*. And even assuming their continued viability, the facts in those cases are distinguishable from the facts in the instant case.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational factfinder could have determined beyond a reasonable doubt that Mehdi knowingly agreed to pay a fee to Jones for the purpose of engaging in sexual conduct. *See Jackson* at 319. We thus hold there is legally sufficient evidence supporting Medhi's conviction for solicitation of prostitution. *See id.* We overrule Mehdi's sole issue.

## Conclusion

We affirm the trial court's judgment.

23

Veronica Rivas-Molloy
Justice

Panel consists of Justices Rivas-Molloy, Johnson, and Dokupil.

Publish.   TEX. R. APP. P. 47.2(b).